**UNITED STATES of America, Appellee,**

v.

**Joseph SCAFO, Defendant-Appellant.**

**No. 329, Docket 72-1891.**

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1972.

Decided Dec. 20, 1972.

---

Thomas R. Pattison, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty. for Eastern District of New York, and L. Kevin Sheridan, Asst. U. S. Atty., on the brief), for appellee.

David M. Markowitz, New York City, (Conrad F. Ferrigno, New York City, on the brief), for appellant.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

LUMBARD, Circuit Judge:

Joseph Scafo appeals from his conviction for stealing goods in foreign commerce in violation of 18 U.S.C. § 659. His principal claim of error is the dis-

trict court's denial of his motion to dismiss for failure of the Government to be ready for trial within the time required by the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. 28 U.S.C.A. (Supp.1972).

On Sunday, August 10, 1969, two cartons containing watches and pearls were taken from a locked wire mesh cage for high value shipments in the American Airlines Cargo Terminal at John F. Kennedy International Airport in Queens.[1] Defendant Joseph Scafo, a Fleet Service Clerk at American Airlines, was arrested for the theft on August 18, 1969. He was indicted nearly two years later on July 28, 1971. Scafo was convicted after a three day jury trial in the Eastern District (John F. Dooling, Jr., J.) commencing January 21, 1972. He was sentenced to three years of imprisonment, all but four months of which were suspended, and to three years of probation.

At his arraignment on August 12, 1971, Scafo moved orally before Judge Judd to dismiss the indictment for failure to comply with the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. Judge Judd denied the motion without prejudice to renewal on formal written papers. By Notice of Motion dated August 13, 1971, the defense again moved for dismissal. After a hearing on August 20, 1971, Judge Judd denied this motion.

At the trial Anthony DiDonna, a cargo handler for American Airlines, testified that while he was at work on Sunday morning, August 10, 1969, he observed Leonard Turano, a supervisor with American Airlines, remove several packages from the high value cage and place them on the floor; he then saw Joey Scafo take the packages outside. The prosecution also called Leonard Turano. He testified that on the Sunday morning in question Scafo had tried to enlist him in a scheme to "hit the cage," but that he (Turano) had ignored

---

1. Edward Naglitsch, a supervisor with American Airlines, testified at trial that when he inventoried the cage at 8:00 a. m. on August 10, 1969, everything was ac-

counted for, but that at 2:00 p. m., when another inventory was taken, the two cartons were missing.

this request. Just before lunch, Turano entered the Cargo Terminal from outside where he had been working and saw Scafo at the cage; "mortified" and "shocked," Turano walked away. However, changing his mind a few minutes later, Turano came back and saw that the cage was closed and that there were two packages on the floor. As Scafo picked them up, one dropped, and Turano picked it up and gave it to Scafo. The next day Scafo gave Turano $850.[2]

Scafo testified in his own defense and denied any knowledge of or complicity in the theft.

Scafo claims that the admission of certain hearsay testimony by Anthony DiDonna was error. DiDonna testified that, after lunch on Sunday, Turano asked him whether he had seen anyone at the cage that morning. When DiDonna answered, "just you and Joe," Turano responded, "don't say that, you know." Scafo argues that this statement was improperly admitted under the res gestae exception to the hearsay rule. Leonard Turano during his own testimony repeated substantially the same conversation without objection.

■ Whether or not this conversation between DiDonna and Turano should have been excluded, we believe no reversible error was committed. In view of the overwhelming evidence of Scafo's guilt, testimony regarding the conversation between DiDonna and Turano was clearly harmless error. If the jury believed DiDonna and Turano, as certainly the jury must have, the conversation added nothing to the strong case the Government presented.

■ Scafo's major contention is that his pre-trial motion to dismiss the indictment for failure to comply with this Circuit's "Prompt Disposition" rules should have been granted. The rules were promulgated on January 5, 1971, with an effective date of July 5, 1971. They applied to cases pending and to those to be commenced in the future. Since Scafo was not indicted until July 28, 1971, this case was fully subject to the new rules. Unless saved by an exception to the Rules, the nearly two year delay between the arrest and the indictment clearly violated Rule 4, which requires the Government to be ready for trial within six months of the date of the arrest.[3]

In its papers opposing the defense motion to dismiss and at the hearing before Judge Judd, the Government maintained that part of the delay was due to negotiations between the prosecutor and defense counsel about a possible guilty plea by defendant Scafo;[4] it also maintained that some of the delay was caused by attempts to secure Turano's cooperation in the case. Turano did not testify before the grand jury until July 28, 1971, the very day the grand jury indicted Scafo. The Government argues that such negotiations constituted an "exceptional circumstance" justifying a "period of delay" within the meaning of Rule 5(h).[5] However, the details of these conversations were not developed at the hearing, and Judge Judd made no findings of fact as to what actually occurred and the delay or delays excused thereby. Thus, it is impossible for us to review the propriety of Judge Judd's denial of

---

2. Both Scafo and Turano were arrested on August 18, 1969, and charged with the crime. Turano later pleaded guilty to a charge of possession of the proceeds of the theft.

3. 4. In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. . . .

4. From the affidavits submitted on the motion to dismiss, it appears that the prosecutor and the defense counsel had at least three telephone conversations between March, 1971, and July, 1971, with regard to the disposition of this case.

5. 5. In computing the time within which the government should be ready for trial under rules 3 and 4, the following periods should be excluded:

   *     *     *     *     *

   (h) Other periods of delay occasioned by exceptional circumstances.

the defense motion. Accordingly, we vacate the judgment of the district court and remand the case for further hearing on the motion to dismiss for failure to comply with the Rules Regarding Prompt Disposition of Criminal Cases.

The district court should make findings of fact on the issues. If the district court finds, after taking such additional evidence as may be relevant, that the motion should be denied, it shall enter new final judgment based upon the record as supplemented by further testimony and findings, thereby preserving to the appellant his right to further appellate review.

On the other hand, if the motion is granted, the indictment should be dismissed.

Remanded for further proceedings.