**UNITED STATES of America,
Appellee,**

v.

**Harvey Bertram POLLAK, Appellant.**

**No. 72–1896.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 1972.

Decided Feb. 27, 1973.

Arthur S. Olick, New York City (George E. Goldberg, James P. Heffernan, New York City, of counsel), for appellant.

John J. Tigue, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for the S. D. of New York, Gary P. Naftalis, Asst. U. S. Atty., of counsel), for appellee.

Before KAUFMAN, ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment of conviction on three counts of perjury, 18 U.S.C. § 1621, resulting in appellant's receiving a suspended 5-year sentence and a $2,000 fine on each count. The principal claim presented is that appellant was denied a speedy trial, under the sixth amendment and the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases (hereinafter the "Second Circuit Rules"). Appellant also urges that (1) he was denied a fair trial because of insufficient preparation time and impatience on the part of the trial judge during trial; (2) the trial court erred in refusing a request to charge that an answer that was "literally accurate or technically responsive, or legally truthful" was not perjurious; (3) the trial court erred in refusing to accede to the jury's request to have the testimony of two key witnesses reread; (4) the trial court submitted too many of the questions asked appellant and his allegedly false answers to the jury; and (5) appellant was denied due process under Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by the prosecutor's failure to supply transcripts of the testimony of two potential defense witnesses. To understand the claims regarding lack of a speedy and a fair trial it is necessary briefly to state the sequence of events from the time of appellant's arrest to the time of his trial.

The indictment was returned on May 27, 1971, charging appellant with perjury before the SEC on August 12, 1970, and before a federal grand jury on April 22, 1971. The Second Circuit Rules took effect July 5, 1971, and on November 18, 1971, the Government filed a notice that it was ready to try the case on 10 days' notice. On July 19, 1971, the court had

ordered the Government to file a bill of particulars and to furnish appellant with copies of his testimony before the SEC and the grand jury relative to manipulation of stock in Belmont Franchising Corporation ("Belmont"), as well as copies of certain documents belonging to appellant or to the brokerage firm, Barad-Shaff Securities Corporation ("Barad-Shaff"), of which he was secretary-treasurer. Apparently because the case was transferred from one Assistant United States Attorney originally in charge to another, the Government did not comply with this discovery order until, following a trial-date conference, appellant moved to dismiss on May 10, 1972, following which the Government immediately complied. On May 12, 1972, the court, without making any findings, denied the motion to dismiss and set the case down for trial commencing May 22, 10 days later.

■ We readily dispose of appellant's claim of denial of a fair trial because he was given insufficient time to prepare after the bill of particulars and other sought-after documentary material were furnished pursuant to the court order for discovery. The bill of particulars reduced the answers claimed to be false in count one of the indictment from 32 to 15, in count two from 23 to 11, and in count three from 23 to 11, thereby assisting appellant in his preparation. The material requested to be furnished was appellant's own testimony before the grand jury and documents of his own and of the company of which he was secretary-treasurer, so that he could have been expected to have at least passing familiarity with that material. This material was neither so bulky nor so complicated that 9 days' time for preparation after its receipt was in any way insufficient. It was evident, moreover that the perjury charges in the first count related to details regarding the sale of 1100 shares of Belmont Stock by Barad-Shaff and the specifics of a meeting with one Hellerman, the controlling stockholder of Belmont; those in the second count related to a meeting between appellant. Hellerman, a "Richie" and a "Mike" (two other brokerage representatives); and those in the third count related to a meeting at Del Soma's Restaurant, Hellerman's presence there, and the backdating of a particular order ticket for Belmont stock following that meeting. It would have taken very little imagination to determine the specific line of Government attack and hence to plan whatever defense could be brought forward once the bill of particulars was filed.

■ Appellant also argues that the trial judge was "impatient" with him and in support of this that the trial was completed in only 4 days when it was originally expected to take from a week to 10 days and that the judge "took virtually no recesses, opened Court promptly each day and stayed in session until late each afternoon." (Brief for Appellant at 19.) We think these comments quite descriptive of high judicial conscientiousness, and the argument based upon them altogether frivolous.

■■ As for the speedy trial claim under the Second Circuit Rules, however, we are handicapped for lack of findings and under United States v. Scafo, 470 F.2d 748 (2d Cir., 1972), we must vacate the judgment and remand for further hearing on the motion to dismiss and specific findings on the issue whether there were "exceptional circumstances" justifying "periods of delay" within Second Circuit Rule 5(h). Such circumstances, we may point out, may within limits of reasonableness include the press of other business on the court or, perhaps, an extraordinary situation in the office of the prosecutor. The Government argues that it complied with the Rules because it filed a "notice of readiness" on November 18, 1971. But it had not complied with the discovery order. One question is whether its notice of readiness was therefore meaningless. In this regard, it may be remarked that there were remedies open to

appellant to obtain compliance with the discovery order. Fed.R.Crim.P. 16(g). We also note the claim that at all times the Government stood ready to permit inspection of the requested documents although it was concededly and probably properly unwilling to give over originals. Whether the Government conveyed this readiness to permit inspection and whether appellant sought to make such an inspection may have some bearing on resolution of the main question. The findings for which we remand will doubtless be of assistance also in determining whether there is any substance whatsoever to the sixth amendment claim raised at oral argument under the balancing test of Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), a claim which in its posture as presented to us, even absent specific findings, borders on the frivolous.

■■■ Appellant argues that under Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), reversing 453 F.2d 555 (2d Cir. 1971), he was entitled to a requested instruction in so many words that "a literally accurate or technically responsive or legally truthful" answer is not perjurious. Bronston aside, however, the court correctly charged the jury that at least one statement in any one count just be "directly and unambiguously false" and gave the appellant the fairest of charges on knowledge of falsity and willfulness.[1] Appellant fails to point to any specific question, moreover, to which his answer was "literally true" or "technically responsive."[2]

■■■ Appellant argues that because the jury apparently asked for the transcribed testimony of the appellant and one Caricato, it was reversible error not to permit the jury to have the transcript, even though the request came only 45 minutes after the jury had retired. The jury's request may have been based on the erroneous assumption that the transcript was available for them to take into the jury room; in fact, however, appellant himself had testified on the very day jury deliberations began and his testimony had not yet been transcribed. The judge offered to have any or all of Caricato's or Pollak's testimony read to

---

1. The third essential element which you must find beyond a reasonable doubt before you may convict is that the defendant at the time he gave false testimony did so unlawfully, wilfully and knowingly.

   In order to satisfy the third essential element the government must establish beyond a reasonable doubt that the defendant testified falsely, and did so deliberately and consciously, knowing at the time that the testimony was false, and intended to convey the false information of what he said.

2. Appellant argues that in regard to count two he was charged with perjury in testifying:

   Q. Did you talk about anybody placing an order for a large amount of Belmont Franchising?
   A. No.
   Q. Do you know what a "burst out" is?
   A. Do I know what a "burst out" is?
   Q. Yes.
   A. No.
   Q. Did you ever use the term before?
   A. No.

   Q. Was there any discussion about somebody placing an order for 20 or 25,000 shares or any large amount of Belmont and not paying for it?
   A. No.
   Q. You didn't hear anybody discuss that that morning?
   A. Placing an order for Belmont and not paying for it?
   Q. Yes.
   A. No.

   He says that Barad-Shaff was a market-maker and technically did not "place" an "order." But the questions do not ask whether he or Barad-Shaff "placed an order," but whether there was any discussion about "anybody" placing an order. There was Government proof that there was a discussion to the effect that one of the manipulators attendant at the meeting would place an order for thousands of shares of Belmont stock and then not pay for it, leaving the broker not a party to the manipulation with stock worth only a fraction of the value to which previously engineered purchases by the manipulators had pushed it.

the jury, but the jury foreman asked to consult with the other jurors before requesting that specific testimony be read. After consultation, the foreman did not request to have any testimony read. Appellant failed to object to the trial judge's request that the jurors inform him of exactly what testimony they wished read and his refusal to send the trial transcript to the jury at the time and cannot now be heard to raise the point, one that in any event would ordinarily lie well within the trial judge's power and duty to run a trial under reasonable ground rules. *Cf.* ABA Standards Relating to Trial by Jury § 5.2(a) (Tent. Draft 1968) ("Whenever the jury's request is *reasonable*, the court . . . shall have the requested parts of the testimony read to the jury . . . .") (emphasis supplied); United States v. De Palma, 414 F.2d 394, 396–397 (9th Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 697, 24 L. Ed.2d 690 (1970).

▎ Appellant's *Brady* point fails because the two witnesses appellant claims gave grand jury testimony favorable to him were known, friendly and available to him—indeed, one was a former employee of his. *Cf.* Xydas v. United States, 144 U.S.App.D.C. 184, 445 F.2d 660, 668, cert. denied, 404 U.S. 826, 92 S.Ct. 57, 30 L.Ed.2d 54 (1971); United States v. Gleason, 265 F.Supp. 880, 887 (S.D.N.Y.1967). On the request to narrow, while proof of a false answer to *any* question in any one count will sustain a perjury conviction on that count, here the appellant did request a restricted submission. *See* United States v. Goldstein, 168 F.2d 666, 671 (2d Cir. 1948). Our review of the record satisfies us, however, that with the evidence taken in the light most favorable to the Government it was proper to submit to the jury all of the questions and allegedly false answers that were submitted.

Judgment vacated and cause remanded for findings on the motion to dismiss.