**UNITED STATES of America,
Appellee,**

v.

**James W. COUNTS and Zedrick Elam,
Appellants.**

**No. 299, Docket 72-1795.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1972.

Decided Jan. 2, 1973.
Certiorari Denied April 16, 1973.
See 93 S.Ct. 1909, 1911.

Elliot L. Evans, New York City, for appellant Counts.

Robert E. Green, Forest Hills, N. Y., for appellant Elam.

Emanuel A. Moore, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., and L. Kevin Sheridan, Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, FEINBERG and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal raises the following questions:

1. Did pretrial identifications of the defendants violate their rights to due process under the fifth amendment and to counsel under the sixth amendment?

2. Was the admission of evidence relating to two spent bullets in a gun recovered in defendant Counts' apartment "plain error"?

3. Was a state warrant to search the apartment defective on its face?

4. Was defendant Counts denied his right to a speedy trial?

Answering each question in the negative, we affirm the judgment below, convicting appellants of robbing a .38 Colt revolver lawfully in the possession of a United States officer, here a federal sky marshal. 18 U.S.C. § 2112.[1]

On November 14, 1970, Charles Byars, the sky marshal, was staying at the JFK Holiday Inn after a flight from Madrid. Hearing a knock at his door and thinking it to be a fellow sky marshal, he turned on the bathroom light and partially opened the chained door. Seeing no one, he released the chain and looked down the hall. A hand appeared with a spray can and a substance was sprayed into his eyes. Another hand, in which Byars saw a gold shield in a black leather case, appeared from the other side of the door. After a struggle, in the course of which Byars lost his wrist watch to one of the intruders, two men entered the room. One (who Byars testified was appellant Elam) had a large bolo-machete knife which he proceeded to hold against Byars' throat telling him that if he moved he would have his head cut off.

The other (who Byars testified was appellant Counts) first sprayed some more substance into Byars' face so that, as Byars later told an FAA agent, he was "barely able to see," and then went through Byars' possessions. Ultimately, after threatening to blow Byars' head off, the robbers took Byars' government-issue revolver and several personal credit cards, including a Carte Blanche card. The following day, November 15, Byars was unable to identify the robbers while viewing some 500 photographs (so far as the record shows not including appellants') shown him at Manhattan police headquarters.

Nine days later, on November 23, 1970, two New York City detectives went to the residence of appellant Counts to execute an unrelated narcotics search warrant. From 30 feet, one of the agents saw Counts lean out of a rear window and drop a brown brief case which hit the ground and spilled out Byars' revolver. In the Counts house the detectives found the heroin for which they had come and, coincidentally, they found appellant Elam, who was carrying a gold narcotics officer's badge in his pants pocket and on the night-stand an airplane trip receipt bearing Byars' Carte Blanche credit card imprint signed by, though not in the hand of, "Charles W. Byars."

A week after the Counts-Elam residential foray, Byars was shown a spread of eight photos at the 107th Precinct of the New York City Police Department, and from these Byars identified Elam positively as the machete-wielder and Counts, tentatively, as the spray-can user. The photos are said to be "unnecessarily suggestive and conducive to irreparable mistaken identification," within Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), and Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), principally because they each bear the number 112470. It is argued that this number must have suggested the date of 11/23/70 to

---

1. Convictions were after a jury trial and on June 26, 1972, appellants were each sentenced to ten years' imprisonment.

Byars who knew his gun had been recovered on that date. At a pre-trial hearing held in accordance with the suggestion in United States ex rel. Phipps v. Follette, 428 F.2d 912, 913 & n. 1 (2d Cir.), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970), Byars testified that the bathroom light "gave plenty of light" (especially because it was next to the door into the Holiday Inn room) and that despite the aerosol spray in his face he actually observed Elam's and Counts' faces for two to three minutes and looked directly at them and could "clearly" see them. We have examined the spread of photographs themselves and do not consider them any more suggestive than the photographs in, *e. g.*, United States v. Harrison, 460 F.2d 270 (2d Cir. 1972), or United States v. Magnotti, 454 F.2d 1140 (2d Cir. 1972). With the vivid memory left by the robbery and accompanying threats of having his head cut or blown off, the witness Byars' testimony that the numbers on the photographs did not influence his identifications because they did not register as signifying a date and that he looked only at the faces in the photographs[2] was justifiably credited by the district court. The time sequence is such as to give the identification further support. *Cf.* United States v. Wade, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

■ There was a subsequent viewing by Byars of the two appellants at a state court arraignment at the Queens County Criminal Courthouse on December 2, 1970. This was a "show-up" in the usual sense,[3] since, while Byars sat in the courtroom for about 45 minutes and saw several other black defendants before Counts and Elam were brought in, he did know that they were coming in. Although he didn't know their names he "immediately recognized" them. Because a United States warrant for the arrest of appellants had been issued the day before (December 1, 1970) by a magistrate in the District Court for the Eastern District of New York, appellants contend this case falls within our recent United States ex rel. Robinson v. Zelker, 468 F.2d 159 (2d Cir., 1972), holding that issuance of a warrant of arrest under New York state practice after information laid before a magistrate was an initiation of "adversary judicial proceedings" within Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L. Ed.2d 411 (1972). There is no reason here for us to reach the question whether the issuance of a federal arrest warrant may be likened to that of a New York state one,[4] for there was ample evidence of independent source of positive identification at the pre-trial suppression hearing. Appellants' argument that because something was sprayed into Byars' face he could not identify them overlooks his testimony that he could see them "clearly," and that, at least as to Elam, Byars' identification was positive. *See generally* N. Sobel, Eye-Witness Identification 128–38 (1972). As to both appellants, moreover, any error would be harmless beyond a reasonable

---

2. Appellants' contentions that they were entitled to counsel at the photographic identification, based on United States v. Ash, 461 F.2d 92 (D.C.Cir. 1972), cert. granted, 407 U.S. 909, 92 S.Ct. 2436, 32 L.Ed.2d 682 (1972), are answered by United States v. Johnson, 467 F.2d 630, 637 (2d Cir. 1972), and United States v. Bennett, 409 F.2d 888, 899–900 (2d Cir.), cert. denied sub nom. Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L. Ed.2d 101 (1969), the controlling precedents in this circuit.

3. As to which, see Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

4. A federal warrant of arrest may issue only upon a showing of probable cause either in the sworn complaint or accompanying affidavit. Fed.R.Crim.P. 4(a). Whether this constitutes commencement of "adversary judicial proceedings" is something else again, however, since at the very least under federal law prosecution for purposes of the statute of limitations does not begin until "the indictment is found or the information is instituted . . . ." 18 U.S.C. § 3282. *But see* In re Strauss, 197 U.S. 324, 331, 25 S.Ct. 535, 49 L.Ed. 774 (1905).

doubt, Chapman v. California, 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in light of the evidence from which guilt could be inferred, involving possession of Byars' gun at Counts' house, Counts' attempt to rid himself of the incriminating gun by dropping it in the brief case out the rear window, the use of Byars' stolen Carte Blanche card evidenced by the receipt found in Counts' house, and the possession by Elam of a gold badge similar to the one shown to Byars at the Holiday Inn. *Cf.* 2 J. Wigmore, Evidence § 278 (3rd ed. 1940).

■ Both appellants complain that testimony was erroneously elicited from the detective who reclaimed Byars' gun (which had been fully loaded when stolen) that the gun had four "live" and two "spent" shells when recovered. Neither appellant objected to the question or moved to strike the answers, let alone requested curative instructions, but— after the judge had more or less intervened to bring the line of interrogation about the bullets to a close—appellants moved for a mistrial on the ground that the "jury [had] no other alternative but to believe this gun had been fired and probably in the commission of a crime." We sustain the trial court's denial of the motion. Not only are there other permissible inferences (Byars was mistaken, the gun had been fired by other parties, the gun had been fired by appellants for purposes other than committing a crime, etc.), but in the absence either of an objection or a motion to strike counsel must be taken to have considered the matter harmless and objections waived. 1 J. Wigmore, *supra* at § 18; *see* Proposed Rules of Evidence for the United States Courts and Magistrates, Rule 103(a)(1), 41 U.S.L.W. 4022 (Nov. 21, 1972). To hold otherwise would make a jury trial a shambles; the trial judge would be expected to monitor every word, listen for every possible inference, try the case for the defendant without assistance from the defense attorney, and then be reversed in the case of every mistake, however trivial. Surely the "plain error" rule has not altogether pre-empted the function of trial counsel.

■ The search warrant obtained by the city detectives who came to Counts' house was based upon an affidavit by one of them, Lawless, to the effect that he had information from two confidential informants that on the same day (November 23, 1970) Counts had obtained one-half kilo of heroin; that information previously received from these very same informants had been so reliable that three arrests with pending grand jury action had been based on it, with names and dates specifically supplied; and that the informants had seen Counts sell narcotics in their presence. Appellant Elam urged in his brief but did not press on argument that this affidavit was insufficiently specific. We disagree. United States v. Sultan, 463 F.2d 1066, 1069 (2d Cir. 1972); United States v. Lewis, 392 F.2d 377, 378–79 (2d Cir.), cert. denied, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968); United States v. Freeman, 358 F.2d 459 (2d Cir.), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966). Both of the principal requirements of Aguilar v. Texas, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), were met here. The underlying basis of the informants' belief was disclosed by recitals showing that the informants had previously seen Counts sell narcotics in their presence. Evidence of the informants' reliability was established by a recital that three arrests with pending grand jury action had resulted from information previously supplied by them and by Lawless' own observation of Counts' habits. United States v. Gardner, 436 F.2d 381, 382 (2d Cir. 1971); United States v. Viggiano, 433 F.2d 716 (2d Cir. 1970), cert. denied, 401 U.S. 938, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971).

■ Only appellant Counts claims a violation of his sixth amendment right

to a speedy trial and his rights under the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. Here there was a delay of 16 months from the filing of the indictment (December 3, 1970) to the commencement of trial (April 10, 1972). In regard to our rules it may be noted that appellant was not "in custody" and hence not entitled to preference under Rule 1(b) even had he requested it. The Government here signified it was ready on December 8, 1970, at which time appellants requested a delay to January 4, 1971. On January 4, 1971, appellants filed motions to suppress evidence, to inspect minutes, to dismiss, etc. The Government filed a second notice of readiness on July 1, 1971, but on January 21, 1972, asked for a one-month adjournment (proper under our Rule 5(c) (i)) because its chief witness, Byars, was on duty in Vietnam. The Government, in short, was at all times ready, literally and within the spirit of Rules 3 and 4. At no time did appellant Counts move for discharge under Rule 8. The delay was occasioned by a combination of ruling on appellants' motions and the press of other court business. We find no violation of the requirements of our Rules.

■ The sixth amendment requires that we balance the length of the delay (16 months), the reasons for the delay (ruling on defense motions, press of other business, unavoidable absence ·of a key witness), the defendant's assertion of his right (none), and prejudice to the defendant (none claimed or shown here). Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Under the circumstances appellant's claim borders on the frivolous, not rising to the dignity of similar claims more recently put forth, say, in our own United States v. Stein, 456 F.2d 844 (2d Cir.), cert. denied, 408 U.S. 922, 92 S.Ct. 2489, 33 L.Ed.2d 333 (1972).

Judgment affirmed.