**UNITED STATES of America,
Appellee,**

**v.**

**Joseph SCAFO, Appellant.**

**No. 868, Docket 73–1163.**

United States Court of Appeals,
Second Circuit.

Argued May 7, 1973.

Decided June 8, 1973.

Conrad F. Ferrigno, New York City (David M. Markowitz, New York City, on the brief), for appellant.

Thomas R. Pattison, Asst. U. S. Atty., Brooklyn, N. Y. (Robert A. Morse, U. S. Atty., L. Kevin Sheridan and Raymond J. Dearie, Asst. U. S. Attys., Brooklyn, N. Y., on the brief), for appellee.

Before SMITH, MULLIGAN and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This is another in a series of recent cases in our Court involving application of the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. 28 U.S.C.A. App. (Supp.1973).[1]

The narrow issue on this appeal is whether, in computing the six-month period within which the government must be ready for trial pursuant to Rule 4 of the Prompt Disposition Rules, such period begins on the *date of arrest* or on the *date of promulgation* of the Prompt Disposition Rules. We hold, in accordance with the plain language of Rule 4 itself, that the six-month period begins with the date of arrest.

Joseph Scafo appeals from (1) a judgment of conviction after jury trial entered January 29, 1973 in the Eastern District of New York, John F. Dooling, *District Judge,* on one count of stealing goods which were part of a foreign shipment, in violation of 18 U.S.C. § 659 (1970), and from (2) an order entered January 19, 1973 by Orrin G. Judd, *District Judge,* denying appellant's motion to dismiss the indictment because of the government's failure to comply with the Prompt Disposition Rules.

Both the judgment and order now appealed from were entered following remand by this Court on a prior appeal, United States v. Scafo, 470 F.2d 748 (2 Cir. 1972), when we vacated the original

---

1. See, e. g., United States v. Lasker, 481 F.2d 229 (2 Cir. 1973) (mandamus vacating order dismissing indictments); United States v. Cuomo, 479 F.2d 688 (2 Cir. 1973) (motion to dismiss denied; judgments of conviction vacated); United States v. Fernandez, 480 F.2d 726 (2 Cir. 1973) (denial of motion to dismiss affirmed; judgment of conviction reversed on other grounds); United States v. Pierro, 478 F.2d 386 (2 Cir. 1973) (order dismissing indictment vacated); United States v. Boatner, 478 F.2d 737 (2 Cir. 1973) (denial of motion to dismiss and judgment of conviction affirmed); United States v. Nathan, 476 F.2d 456 (2 Cir. 1973) (denial of motion to dismiss and judgments of conviction affirmed); United States v. Rollins, 475 F.2d 1108 (2 Cir. 1973) (order dismissing indictment vacated; on subsequent appeal, second order dismissing indictment vacated (2 Cir. Oct. 31, 1973)); Hilbert v. Dooling, 476 F.2d 355 (2 Cir. 1973) (en banc) (mandamus directing dismissal of indictment); United States v. Pollak, 474 F.2d 828 (2 Cir. 1973) (remanded for further findings on motion to dismiss); United States v. Infanti, 474 F.2d 522 (2 Cir. 1973) (denial of motion to dismiss affirmed; one judgment of conviction affirmed, one reversed on other grounds); United States v. Valot, 473 F.2d 667 (2 Cir. 1973) (remanded for further findings on motion to dismiss; on subsequent appeal, denial of motion to dismiss affirmed, 481 F.2d 22 (2 Cir. 1973)); United States v. Strayhorn, 471 F.2d 661 (2 Cir. 1972) (denial of motion to dismiss and judgment of conviction affirmed); United States v. Counts, 471 F.2d 422 (2 Cir. 1973) (denial of motion to dismiss and judgments of conviction affirmed); United States v. Scafo, 470 F.2d 748 (2 Cir. 1972) (remanded for further findings on motion to dismiss; on subsequent appeal—instant case—denial of motion to dismiss reversed and case remanded to vacate conviction and dismiss indictment); United States v. Pacelli, 470 F.2d 67 (2 Cir. 1972) (denial of motion to dismiss and judgment of conviction affirmed); United States v. Singleton, 460 F.2d 1148 (2 Cir. 1972) (denial of motion to dismiss and judgment of conviction affirmed).

See generally Comment, Speedy Trials and The Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 71 Colum.L.Rev. 1059 (1971).

judgment of conviction and ordered the district court to make findings more specific than it had made in denying a previous motion to dismiss for failure to comply with the Prompt Disposition Rules.

Upon remand, Judge Judd did make specific findings of fact on the motion to dismiss, and again denied the motion. Also in accordance with our remand, Judge Dooling thereafter entered a new judgment of conviction. It is from Judge Judd's second order denying the motion to dismiss and from the new judgment of conviction that the instant appeal has been taken.

For the reasons below, we reverse the order denying the motion to dismiss the indictment, and we remand the case to the district court with instructions to vacate the judgment of conviction and to dismiss the indictment.

## I.

A brief summary of prior proceedings in this case is necessary to an understanding of our decision.

On August 10, 1969, two cartons—one containing watches from Italy, the other pearls from Japan—were stolen from a locked wire mesh cage for high value shipments in the American Airlines Cargo Terminal at John F. Kennedy International Airport, Queens, New York.

On August 18, 1969, appellant Scafo and one Leonard Turano, both employees of American Airlines, were arrested and charged with the theft of the two cartons. They were arraigned before a United States Commissioner, waived preliminary hearing, and were released on their own recognizances.

For a period of nearly two years, the case remained dormant—until July 28, 1971 when Scafo was indicted.

On August 12, 1971, Scafo was presented for plea before Judge Judd. He pleaded not guilty. On that date in an oral motion, and on the following day in a written motion, he moved to dismiss the indictment because of the failure of the government to comply with the Prompt Disposition Rules. A hearing was held before Judge Judd on August 20, at which time the motion was denied in open court.

Following a pretrial conference before Judge Dooling on November 22, 1971, Scafo was tried before Judge Dooling and a jury beginning January 21, 1972. After a three day trial, the jury returned a verdict of guilty as charged. On March 24, 1972, he was sentenced to a three year prison term, all but four months of which was suspended, and was ordered on probation for three years. He has been enlarged on his own recognizance pending appeal.[2]

On the first appeal, the principal issue was the propriety of Judge Judd's denial of Scafo's motion to dismiss the indictment for failure to comply with the Prompt Disposition Rules.[3] In an opinion filed December 20, 1972, we vacated the judgment of conviction and remanded for a hearing and further findings on the motion to dismiss. 470 F.2d at 751. After noting that the government had argued that a number of "exceptional circumstances" justified a period of delay within the meaning of Rule 5(h) of the Prompt Disposition Rules, and that Judge Judd apparently had concluded that the government had satisfied its burden under the Rules, we concluded

---

2. Apparently some time after his arrest on August 18, 1969—we are not told when—Turano pleaded guilty to a charge of possession of the proceeds of the theft. United States v. Scafo, *supra*, 470 F.2d at 750 n. 2. We have not been informed as to the disposition of Turano's case.

For further details of the evidence adduced at Scafo's trial, see our earlier opinion. 470 F.2d at 749–50.

3. He also raised a question of the admissibility of certain hearsay testimony. As to this, we held that, even if error had been committed, "[i]n view of the overwhelming evidence of Scafo's guilt, [such error] was clearly harmless error." 470 F.2d at 750.

that "the details of [the 'exceptional circumstances'] were not developed at the hearing, and Judge Judd made no findings of fact as to what actually occurred and the delay or delays excused thereby." 470 F.2d at 750.

Upon remand, in accordance with our directions, Judge Judd promptly held a further hearing on January 4, 1973. Additional evidence was taken, including testimony by counsel for Scafo and counsel for the government. In a memorandum opinion filed January 19, 1973, Judge Judd, after summarizing the prior proceedings, the evidence and the applicable law, made the following findings of fact:

"1. That the charges against defendant Joseph Scafo and Leonard Turano were reassigned to Assistant United States Attorney Pattison on about March 17, 1971.

2. That the delay of a little more than two months after January 5, 1971 [the date on which the Prompt Disposition Rules were announced] in making the reassignment was caused by exceptional circumstances, namely, the impact of the new Rules and the resignation of the Assistant who previously had the case, and that this period should be excluded from the six-months computation.

3. That a reasonable period to explore the possibility of a guilty plea by defendant Scafo should be excluded from the six-months computation; and in this case, that a period of one month should be allowed for that purpose.

4. That a reasonable period to prepare the government's case should also be excluded, particularly in view of (a) the importance of Leonard Turano's testimony for the government, (b) his assertion of fears which deterred him from cooperating, and (c) the necessity of reaching a judgment as to whether it was sound policy to let him plead guilty to a misdemeanor; and that a period of at least sixty days should be allowed for this purpose.

5. That all the periods mentioned should be treated as excusable delay, occasioned by exceptional circumstances, outside the six-months period.

6. That the delays in prosecution did not prejudice the defendant." [4]

Judge Judd concluded that these various periods of excusable delay brought the government within the six-months period permitted by the Prompt Disposition Rules. He held that there had been no violation of those Rules. He denied the motion to dismiss the indictment.

Pursuant to our instructions,[5] Judge Judd referred the case to Judge Dooling for resentencing. On January 29, 1973, Judge Dooling resentenced Scafo, imposing the same sentence as originally imposed on March 24, 1972, and entered a new judgment of conviction.

The instant appeal is from Judge Judd's order of January 19, 1973 denying the motion to dismiss the indictment and from the new judgment of conviction entered January 29, 1973. On this appeal, appellant has focused on whether the district court erred in finding that the reasons for the delay asserted by the government satisfied the "exceptional circumstances" provision of Rule 5(h). We find it unnecessary to determine the sufficiency under the Rules of each of the reasons asserted. We hold that, regardless of those reasons, the government failed to comply with the Rules, and the indictment must be dismissed.

---

4. This last finding would be of significance only with respect to Scafo's constitutional speedy trial claim. No such claim has been raised on appeal.

5. "The district court should make findings of fact on the issues. If the district court finds, after taking such additional evidence as may be relevant, that the motion should be denied, it shall enter new final judgment based upon the record as supplemented by further testimony and findings, thereby preserving to the appellant his right to further appellate review." 470 F.2d at 751.

## II.

The Second Circuit Rules Regarding Prompt Disposition of Criminal Cases were promulgated on January 5, 1971, to take effect on July 5, 1971.[6] The essential construction problem before us on this appeal is whether, when the Circuit Council noted in its Statement accompanying the Rules that "[t]he rules are designed to apply equally to all cases now pending as well as to all cases commenced in the future", it meant that on July 5, 1971 all cases six months or older would be subject to the full effect of the Rules, or rather that on July 5, 1971 all cases pending as of January 5, 1971 would be deemed to have had their first relevant prosecutorial act[7] on January 5. The result in this case turns on which of these alternative interpretations is correct: if the former, the relevant period of delay would be computed from August 18, 1969 (date of arrest); if the latter, the period of delay would be computed from January 5, 1971 (date of promulgation of Rules).

■ During the short life of the Rules, there has been a paucity of reported decisions dealing with pre-1971 cases. This suggests that the offices of the United States Attorneys in the Circuit made good use of the six-month grace period before the effective date to prepare certain of their cases for prompt trial, and otherwise to dispose of those cases considered less worthy of the limited resources of personnel, money and time available to the offices. What is important to remember is that this was exactly the purpose of the delay in implementing the Rules[8]—and not, as the assumption below seems to have been, to provide for a blanket commencement of the six-month period specified in Rule 4 to begin January 5. Indeed, it may be surmised that it was no more than coincidence that both Rule 4 and the post-announcement buffer specified identical periods of six months.[9] The key appears to lie in the language of the Circuit Council's Statement quoted above—that the Rules are to apply *equally* to cases pending on January 5, 1971 and to those commenced thereafter. We are unable to read that language to mean that for a case pending on Janu-

---

**6.** The Prompt Disposition Rules have since been superseded by plans promulgated by the various district courts within the circuit, and approved by the Judicial Council, in accordance with Fed.R.Crim. P. 50(b). Those plans became effective April 1, 1973. Nevertheless, unlike certain other problems left open by the Prompt Disposition Rules but settled in the Rule 50(b) plans, see, e. g., Hilbert v. Dooling, 476 F.2d 355, 356 n. 2 (2 Cir. 1973) (en banc), it is possible that the issue on the instant appeal may recur under the new formulations, although with the passage of time this will become increasingly unlikely.

**7.** Rule 4 provides that "[i]n all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest."

**8.** "The six-month period before the rules become operative should provide sufficient time for United States Attorneys to determine which cases should be reached for trial and which cases should be discontinued, since the need for such action has already been brought to their attention on numerous occasions. The six-month period also permits the Council to consider any further suggestions regarding the content of the rules." Statement of the Circuit Council to Accompany Second Circuit Rules Regarding Prompt Disposition of Criminal Cases, 28 U.S.C.A. App. (Supp. 1973).

**9.** A preliminary draft of the Prompt Disposition Rules originally specified a delay of ninety days, rather than six months, from the date of promulgation to the effective date. The ensuing discussion of the draft resulted in a general agreement that ninety days might not be sufficient time for the offices of the United States Attorneys to prepare for the effective date. Accordingly, the gestation period was increased to six months. This would suggest that the Circuit Council intended no Rule 4-type impact to be afforded the pre-July 5, 1971 grace period before the Rules became effective.

ary 5 a delay in prosecution from August 18, 1969 can be totally ignored.

The few reported decisions which have involved a similar chronology have agreed, some by implication. In United States v. Counts, 471 F.2d 422 (2 Cir. 1973), the defendant was indicted on December 3, 1970, and trial did not commence until April 10, 1972. We referred to this as a "delay of 16 months", but held that, since the government had filed a notice of readiness for trial before the effective date of the Rules and in fact was ready for trial at all relevant times, no violation of the Rules had occurred. See also United States v. Nathan, 476 F.2d 456, 461 (2 Cir. 1973) (arrest June 1970, indictment August 1970, government ready for trial June 1971, trial June 1972); United States v. Infanti, 474 F.2d 522, 527–29 (2 Cir. 1973) (chronology similar to that in instant case; claim under Rules rejected because not raised below). In our opinion on the prior appeal in the instant case, the point was made quite directly:

> "The rules were promulgated on January 5, 1971, with an effective date of July 5, 1971. They applied to cases pending and to those to be commenced in the future. Since Scafo was not indicted until July 28, 1971, this case was fully subject to the new rules. Unless saved by an exception to the Rules, *the nearly two year delay between the arrest and the indictment clearly violated Rule 4*, which requires the Government to be ready for trial within six months of the date of the arrest." 470 F.2d at 750 (emphasis added).

Early in the history of the Rules, moreover, the office of the United States Attorney for the Eastern District of New York argued that it was the intent of the Circuit Council, with respect to cases pending as of the July 5, 1971 effective date, that the six-month period specified in Rule 4 should begin to run on July 5. That contention was squarely rejected by the District Court for the Eastern District of New York on October 8, 1971:

> "This construction . . . is contrary to the clear mandate of the Second Circuit that on the effective date the provisions of the Criminal Case Rules, including the six-month readiness requirement of rule 4, are applicable to all pending cases. The Second Circuit underscored its intent by instructing the Government's attorneys to use the six-month period between promulgation and effective date 'to determine which cases should be reached for trial and which cases should be discontinued.'" United States v. Kaye, 334 F.Supp. 326, 328 (E.D.N.Y.1971) (emphasis deleted).

The underlying premise of these cases is that the January 5, 1971 promulgation date has no bearing on the computation of any period of delay. The six-month delay between the promulgation date and the effective date was intended solely as a buffer period. It was not meant to imply that, in all cases pending on January 5, 1971, the period of delay should be computed from that date. This is consistent with the plain language of the Rules and the Circuit Council's Statement appended thereto.

■ We hold that the appropriate period within which the government was required to be ready for trial should have been computed from August 18, 1969, the date of arrest. This being so, even if we were to accept Judge Judd's findings that the various periods of delay on the part of the government were occasioned by exceptional circumstances, the government would still be wide of the mark of complying with the six-month readiness period prescribed by Rule 4.

Since we find that the government clearly violated the Prompt Disposition Rules, we hold that the district court erred in denying the motion to dismiss the indictment.

### III.

In view of its importance in the administration of the Prompt Disposition Rules (as well as the district court Rule

50(b) plans, see note 6, *supra*), we think it is appropriate to direct attention to what appears to have been the district court's misapprehension of what constitutes the government's readiness for trial. This focuses upon the other end of the period of delay relevant to the evaluation of a motion to dismiss under the Prompt Disposition Rules.

 Throughout its opinion, the district court speaks of the period of delay between the arrest and indictment of Scafo. Nowhere did the court find, or indeed even question, that the government was in fact *ready for trial* on the date the indictment was returned. There is no presumption that having sufficient evidence to warrant an indictment is necessarily an indication that the government is ready for trial within the meaning of Rule 4. For aught that appears in this record, no notice of readiness, either formal or informal, was ever transmitted to either the district court or the defendant prior to the time of the trial.[10] As we recently have stated, "under Rule 4 the Government must communicate its readiness for trial to the court *in some fashion* within the six-month period, as extended pursuant to Rule 5." United States v. Pierro, 478 F.2d 386, 389 (2 Cir. 1973) (emphasis added). Nothing in the instant case suggests that the court at any time was so informed. We are unwilling to accept the view that the filing of an indictment, even after a delay of two years, is enough to satisfy the government's burden referred to in *Pierro*.

Finally, in view of our holding above, we do not reach the merits of appellant's objections to the district court's findings that the reasons for delay asserted by the government satisfied the "exceptional circumstances" provision of Rule 5(h). While we have serious doubts as to the sufficiency of certain of the reasons for delay asserted by the government, we believe, in view of our holding above, that such issues are best left for another day.

Reversed and remanded with instructions to vacate the judgment of conviction and to dismiss the indictment.

---

10. While a pretrial conference was held on November 22, 1971, there is no indication that the government stated its readiness for trial even at that time.