**UNITED STATES of America,**
Appellee,

v.

**James FAVALORO et al., Appellants.**

Nos. 361, 362, 370, Dockets 73-2060,
73-2065, 73-2089.

United States Court of Appeals,
Second Circuit.

Argued Nov. 1, 1973.

Decided March 18, 1974.

Opinion on Rehearing May 23, 1974.

George G. Bashian, Jr., Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D.N.Y., L. Kevin Sheridan, Asst. U. S. Atty., of counsel), for appellee.

Alan F. Scribner, New York City (Ivan S. Fisher, New York City, of counsel), for appellant Favaloro.

Maurice Brill, New York City, for appellant Soluri.

Jay Gregory Horlick, New York City (Zerin, Cooper & Horlick, P. C., New York City, of counsel), for appellant Moschitta.

Before MOORE, HAYS and MANSFIELD, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from judgments of conviction for possession and sale of goods stolen from interstate commerce, 18 U.S.C. §§ 659, 2313, and 2315. Appellants argue that they were denied a speedy trial under the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases.[1] We agree with respect to two defendants and therefore reverse their conviction with orders to dismiss the indictments against them. We affirm the conviction of the third defendant.

Appellants were arrested on February 25 and 26, 1969, but not brought to trial until March 19, 1973. On July 16, 1971 appellant Soluri moved to dismiss the indictment against him because of the government's delay in bringing him to trial and its failure to comply with the Prompt Disposition Rules, and with Rule 48(b), F.R.Cr.P.[2] The government did not file its notice of readiness until July 22, 1971. On its face this seems to establish a violation of Rule 4, which requires the government to be ready for trial within six months of arrest. But the government seeks to sustain the denial of the motion by the district court on the grounds that our holding in United States v. Pierro, 478 F.2d 386 (2d Cir. 1973), should not be applied retroactively and that conditions in the United States Attorney's office for the East-ern District of New York constituted "exceptional circumstances" under Rule 5(h). We reject both contentions.

I.

In United States v. Pierro, *supra*, we held that "the Government must communicate its readiness for trial to the court in some fashion within the six-month period . . . ." 478 F.2d at 389. We reasoned that "[t]he fact that the Government knows it is ready for trial will be of little significance to the court if it is not given that information." Id. at 388. Without this requirement the defendant in each case would move for dismissal at the end of the six-month period and the court would have to hold an evidentiary hearing to determine retroactively whether the government had been ready for trial within six months. We concluded that the drafters of the rules had not intended such a "wasteful procedure." Id.

The government argues that *Pierro* should not apply to the instant case, where the relevant facts occurred before the decision in *Pierro*. It contends that the decision was "legislative," supplying an additional requirement which the rules did not explicitly require. We disagree.

In United States v. Scafo, 480 F.2d 1312, 1318 (2d Cir. 1973), we implied that *Pierro* should apply retroactively. We now hold explicitly that it does. *Pierro* merely enunciated what should have been clear from the beginning. Because the government failed to give notice the court below was forced to resort to precisely the "wasteful procedure" which the court in *Pierro* feared. The failure to give notice cannot be excused, especially since the notice of readiness procedure had been adopted by the office of the U.S. Attorney for the Eastern District of New York prior to the effective date of the Prompt Disposition Rules.

---

1. The Prompt Disposition Rules have been superseded by the new Circuit Plan for Achieving Prompt Disposition of Criminal Cases. The instant case is governed by the old rules.

2. A similar motion to dismiss was made by Favaloro on March 9, 1973. Both his motion and Soluri's earlier motion to dismiss were denied prior to trial.

## II.

The government argues alternatively that conditions in the office of the United States Attorney for the Eastern District of New York constituted "exceptional circumstances" within the meaning of Rule 5(h).[3] We disagree.

On February 13, 1969 the United States Attorney for the Eastern District left office. His successor did not take office until October 15, 1969. In the hiatus the number of Assistant United States Attorneys in the office dropped sharply and the backlog of pending cases increased correspondingly. As conditions in the office returned to normal the prosecutor devoted his attentions to "jail cases" (cases in which defendants were incarcerated) and cases older than the instant case. This case was assigned during the first two years of its pendency to two different Assistant United States Attorneys. Neither attempted to procure indictments in the case, much less to bring it to trial. In April, 1971 the case was assigned to a new assistant, who obtained indictments on June 19, 1971 and filed a notice of readiness on July 22, 1971, six days after appellants' motion to dismiss.

In United States v. Pollak, 474 F.2d 828 (2d Cir. 1973), we suggested that, "perhaps, an extraordinary situation in the office of the prosecutor" could constitute an exceptional circumstance. 474 F.2d at 830. Without categorically rejecting that suggestion we find that the facts here do not amount to "exceptional circumstances."

■ The Circuit Council of the Second Circuit knew the conditions within the circuit when it adopted the Prompt Disposition Rules on January 5, 1971. It had consulted the United States Attorneys in the circuit. See *Statement of the Circuit Council to Accompany Second Circuit Rules Regarding Prompt Disposition of Criminal Cases*, 28 U.S. C.A. App. 67 (1973 Supp.). Indeed, it intended through the rules to prod the United States Attorneys to take whatever steps were necessary to dispose of criminal cases rapidly. It cannot have intended sub silentio to exempt the Eastern District from the rules at the very moment that it promulgated them. Rule 5(h) "was intended to cover ,extraordinary occasions that the drafters could not envision," United States v. Rollins, 475 F.2d 1108, 1110 (2d Cir. 1973), not situations of which the drafters were well aware.

The Circuit Council did make certain provisions to ease the introduction of the new rules. Specifically, it provided that the rules would not take effect until six months after promulgation. It stated the purpose of the six-month period as follows:

"[T]he six-month period before the rules become operative should provide sufficient time for the United States Attorneys to determine which cases should be reached for trial and which cases should be discontinued, since the need for such action has already been brought to their attention on numerous occasions." *Statement of the Circuit Council*, supra, at 68. See also United States v. Scafo, 480 F.2d 1312, 1316 n. 8 (2d Cir. 1973).

If the United States Attorney did not intend to notify the district court of its readiness within the prescribed period, it should have discontinued the case.

■ Finally, we note that the delay between arrest and readiness for trial exceeded the six-month limit not by a few weeks or even a few months, but by nearly two years. More than twenty months of delay occurred *after* the new United States Attorney had taken office in the Eastern District. It was precisely this kind of inordinate delay, with the resulting erosion of public confidence and respect for the process of law en-

---

3. Rule 5 reads as follows:
   "In computing the time within which the government should be ready for trial under rules 3 and 4, the following periods should be excluded:

   (h) Other periods of delay occasioned by exceptional circumstances."

**626**

forcement, that the Circuit Council hoped to overcome with the Prompt Disposition Rules. See *Statement of the Circuit Council,* supra, at 67. To hold that heavy caseloads or backlogs justify years of delay in proceeding to trial would thrust us back to the intolerable conditions which existed prior to the adoption of the rules. We reject such a holding.

### III.

As to appellant Moschitta a different situation exists. His counsel failed to join the motion of July 16, 1971. Under Rule 8 (Rule 7 of the new rules) "failure of a defendant to move for discharge prior to . . . trial shall constitute waiver of such rights [under the Prompt Disposition Rules]."

Accordingly, Moschitta must rely on claims under the sixth amendment and Rule 48(b) of the Federal Rules of Criminal Procedure. Both claims fail because he did not timely assert his rights thereunder and because he suffered no prejudice from the delay. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); United States v. Infanti, 474 F.2d 522, 527–529 (2d Cir. 1973); United States v. Singleton, 460 F.2d 1148, 1152 (2d Cir. 1972), cert. denied, 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973).

Affirmed as to appellant Moschitta. Reversed as to appellants Favaloro and Soluri with instructions to vacate the judgment of conviction and to dismiss the indictments.

MOORE, Circuit Judge (dissenting):

The majority summarily rejects the findings and conclusions of Judge Bartels, who afforded the defendants a lengthy (159 pages of transcript) evidentiary hearing to support their claim of denial of a speedy trial. By jury verdict the defendants have been determined to have been guilty. No prejudice has been shown from the delay which might have deprived them of a fair trial.

On the hearing before Judge Bartels, four witnesses were called, three former Assistant United States Attorneys and the law clerk of Judge Rosling (deceased). After giving careful consideration to the exceptional circumstances which existed during the period in question in the United States Attorney's Office in the Eastern District, Judge Bartels found that the "exceptional circumstances" within the meaning of Rule 5(h) existed. He listed the 41 cases, all criminal with minor exceptions, which Judge Rosling had tried between September 1971 and April 1973, preference being given to jail and older-date cases. Three different United States Attorneys were in office during the period in question. Mass resignations of Assistants resulted. Restaffing required substantial periods of time. Changes of counsel for the defendants caused delays.

In short, in my opinion, it is not for an appellate court, isolated from the practical problems of the prosecutor's office, to substitute its views for those of the Judge who heard the witnesses and was familiar with the local situation.

I would affirm Judge Bartels.

On Petition for Rehearing
HAYS, Circuit Judge:

By an opinion dated March 18, 1974, this Court reversed as to appellants Favaloro and Soluri judgments entered in the United States District Court for the Eastern District of New York convicting appellants of violation of 18 U.S.C. §§ 659, 2313 and 2315 by possession and sale of goods stolen from interstate commerce. We affirmed as to appellant Moschitta on the ground that he had failed to join in the motion by other appellants before the court below to dismiss for failure of the government to comply with the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases.

On petition for rehearing it has been shown that appellant Moschitta did join this motion. We therefore grant the petition, vacate our original decision as to appellant Moschitta and reverse the judgment of the district court with instructions to dismiss the indictment against him.