**Jacob Dale FREDERICK, Petitioner,**

v.

**T. J. RESHETYLO, M. D., Superintendent, Lima State Hospital, Respondent.**

**No. C 73–173.**

United States District Court, N. D. Ohio, W. D.

Sept. 19, 1973.

Konrad Kuczak, Dayton, Ohio, for petitioner.

Donald L. Billman, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## OPINION and ORDER

WALINSKI, District Judge.

This cause came to be heard on a petition for a writ of habeas corpus which was filed pursuant to 28 U.S.C. § 2254. The petitioner is presently incarcerated in the Lima State Hospital by reason of an order of the Court of Common Pleas of Montgomery County, Ohio. That court found the petitioner to be a psychopathic offender under § 2947.25(B), Ohio Revised Code, and committed him for an indefinite time.

Petitioner had been convicted of rape, assault with a dangerous or deadly weapon, and breaking and entering an inhabited dwelling in the nighttime by a jury of the court. He appealed his conviction to the Second District Court of Appeals in Montgomery County where it was affirmed, and the Ohio Supreme Court overruled his motion for leave to appeal. In his appeal, petitioner claimed that the verdict against him was procured as a result of pretrial identification procedures, which violated his right to due process of law under the Fourteenth Amendment. He further claimed that the state failed to prove an essential element of the breaking and entering charge, that the court erroneously refused to order a new trial when a state witness made a prejudicial remark in the presence of the jury in response to a question, and that the verdict was manifestly against the weight of the evidence. The petitioner raises here all but the last contention as grounds for habeas corpus relief.

### I. The Facts

Mrs. Gaddis Triplett awoke in the early morning hours of May 24, 1970, to see a man standing in her living room where she had been sleeping. She had believed him at first to be her husband; but when he responded to her question,

she knew that it was someone else. The intruder suddenly produced a long knife which he held to her chest. After threatening her and her child who was sleeping nearby, and cutting her hand with his knife, he forced her out on the porch of her home, where in the eerie glow of a nearby streetlight, he compelled her to submit to sexual intercourse with him. After he had finished, he fled into the night.

After she had awakened her husband who notified the Dayton Police, Mrs. Triplett was treated in the hospital for her wound and examined, in accordance with the law, as to her complaint about the assault she had suffered. Later she returned home where she discovered that two billfolds were missing, along with some cash, a credit card, and her husband's Army discharge which were contained in the wallets. She also discovered that a window in her basement, which she habitually kept closed and locked, had been broken.

A few days later she visited the police headquarters where she was shown several photographs, none of which she could identify as being her assailant.

Nearly five months later the Dayton Police arrested petitioner on another charge. During a search of his person incident to his arrest, the police found a credit card issued to Mrs. Triplett's husband, as well as the missing Army discharge and driver's license. Mrs. Triplett was subsequently called to the police department where she was shown an array of six photographs which included one of the petitioner.

The photographs were the standard identification photographs used by the Dayton Police Department. All of them portrayed a subject of similar characteristics to the petitioner, and all of them had an identification block on the front of the photograph which contained a series of numbers which represented the date on which the photograph had been taken. The petitioner's bore the numbers 10 6 70, indicating that the picture had been taken on the day before Mrs.

Triplett viewed it. None of the other pictures bore the same date as petitioner's. The dates ranged from 1961 to 1968.

Mrs. Triplett identified the photograph of petitioner as being of her assailant. She later testified that she never saw the dates on any of the photographs, and she made a positive in-court identification of petitioner at his trial. It should be noted that petitioner concedes that the prosecutrix has no doubt that petitioner is the man who assaulted her (Brief for Petitioner p. 4).

## II. Prejudicial Remark and Essential Element of Crime

Before considering petitioner's contentions regarding the photographic identification, we will consider his other arguments in support of his petition. Briefly, he argues that a witness in response to a question blurted out a remark which prejudiced petitioner before the jury, and that the state failed to carry its burden of proof on one of the material elements of the crime charged in the indictment. We consider both contentions as being without merit.

The prejudicial remark occurred when a witness, a Dayton Police Officer who had arrested petitioner on an unrelated charge to this matter, was asked if he had taken into his possession anything in the vicinity of petitioner when he was arrested. After responding in the affirmative, the witness was asked "Where?" In response to this question, the witness answered to the effect that a long knife had been found. Objection was made to the answer as being non-responsive. Later when the knife was sought to be introduced, objection was made and sustained, and it was denied admission as evidence. No motion to strike the prejudicial remark itself was ever made by petitioner.

■■ We consider respondent's position on this issue to be well taken. The rule is that errors in the introduction of evidence in a trial in a state court are not grounds for relief in a petition for

habeas corpus relief to a United States District Court unless these errors rise to the level of a deprivation of due process of law. Reese v. Cardwell, 410 F.2d 1125 (6th Cir. 1969); United States ex rel. Cannon v. Maroney, 373 F.2d 908 (3rd Cir. 1967). It cannot be fairly said that this evidence is so prejudicial as to be a constitutional deprivation of due process standing as it does, along with other evidence which the jury could have considered as linking the defendant-petitioner with acts he was accused of committing.

■■ The same rationale applies to petitioner's other contention respecting the state's failure to carry its burden of proof of an essential element of the breaking and entering charge. Petitioner argues that the state failed to prove that there was a forcible breaking such that petitioner could be convicted of the breaking and entering charge. There was testimony, however, that a window in the basement was found open, which was normally kept shut. From this evidence the jury could have inferred the necessary breaking and entering. Petitioner's argument thus goes to the sufficiency of the evidence.

Here again the rule is that the sufficiency of evidence sustaining a conviction is not reviewable by a federal district court in a habeas corpus case "unless the conviction is so totally devoid of evidentiary support as to raise a due process issue." Mathis v. Colorado, 425 F.2d 1165, 1166 (10th Cir. 1970). See Ballard v. Howard, 403 F.2d 653 (6th Cir. 1968); Jones v. Haskins, 343 F. Supp. 645 (S.D.Ohio 1971); Houston v. Perini, 348 F.Supp. 6 (N.D.W.D.Ohio 1972). That petitioner's claim does not rise to the level of a denial of due process is readily apparent.

### III. The Photographic Identification

This brings us to what is petitioner's most compelling contention: viz. that the procedures used by the Dayton Police Department in the photographic identification of petitioner were so impermissibly suggestive as to violate his right to a fair trial and due process of law.

The basis of this argument is that the numbers on the front of petitioner's photograph were intended to represent a date to the witness which she so understood and that, since she was aware that an arrest of a suspect had been recently made, this date suggested that specific photograph as being the one of her assailant. Thus, the procedure followed is claimed to be too impermissibly suggestive and it, in turn, fatally tainted Mrs. Triplett's in-court identification of the petitioner.

■ Clearly, petitioner is correct that overly suggestive pretrial photographic procedures, which flaw any identification at trial, are violative of due process of law. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). There is, however, no single broad standard by which we are to assess the degree of suggestiveness of procedures used by the police to obtain an out-of-court identification. Rather we are to focus on the totality of the circumstances surrounding the identification. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 383–384, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968); Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). As the Supreme Court recently reaffirmed, "the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'" Neil v. Biggers, *supra*, at 198, 93 S.Ct. at 381. Among the factors to be considered are:

"* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199, 93 S.Ct. at 382.

It should be clear that our function in a habeas corpus case where a pretrial photographic identification is challenged as being violative of due process, is not to require the police department to prefer one procedure over another. Instead, we must deal with each case as it comes to us.

■ Turning to the present case, the record shows that Mrs. Triplett had ample opportunity to view her assailant. She testified that she saw him standing in her partially-lit living room where she scuffled with him and entreated him not to harm her or her child. Moreover, she testified that the front porch, where she underwent the assault, was lit by a nearby streetlight (Tr. p. 40).[1]

The record also indicates that the witness was not unconscious during her ordeal. In fact, the inferences which the jury could easily have drawn are that upon being awakened and having the life of her child threatened, the witness reached a high degree of attentiveness.

The witness' description of her assailant, while not accurate in every detail with that of the defendant-petitioner, coincided in several respects. The central point of difference is that Mrs. Triplett described her assailant initially as having false teeth while the petitioner has his natural teeth. It should be noted that Mrs. Triplett based her assertion that the man who assaulted her had no teeth on an impression formed while her attacker attempted to kiss her and not on visual appearance. Otherwise, her initial description of a man who was balding, not too tall, and heavyset, appears to comport with petitioner's characteristics.

As previously noted, petitioner concedes, as he must, that the witness is certain that her identification is correct. Moreover, the witness' husband, who was present at the photographic identi-fication, testified that his wife reacted as soon as she saw petitioner's photo-graph and that she became "upset" (Tr. p. 68).

More than four months passed between the alleged rape and Mrs. Triplett's identification. That length of time, without more, is not indicative of unreliability or otherwise. It does suggest the need to be cautious and to scrutinize the procedures followed carefully so as to uncover any suggestiveness which would poison the reliability of the identification. Considered against the other factors, four months does not appear overly long.

■ While we recognize that the test of Neil v. Biggers is not meant to be mechanical, this Court feels that the procedures used by the Dayton Police Department were not so impermissibly suggestive as to taint the identification made at petitioner's trial. No single factor compels this conclusion. The record taken as a whole, and construed in light of Stovall, Simmons, and Biggers, leads us to the opinion that any taint of suggestiveness is not so flagrant as to amount to a denial of due process.

It should also be pointed out, as the Supreme Court did in Simmons v. United States, supra, 390 U.S. at 384, 88 S. Ct. 967, that any danger of misidentification here may be lessened by cross-examination at trial which exposes the potential for unreliability. Counsel for petitioner made a lengthy, searching cross-examination of the witness at trial. Without procedures more flagrantly suggestive than those used here, we are unwilling to overturn petitioner's conviction.[2]

We are not unmindful of the fact that the freedom of a man is at stake here. The Court feels that the responsibility which it bears in a habeas corpus proceeding is among the most serious of

---

1. It does not appear that Mrs. Triplett's meeting with her attacker was any less direct or intimate than that of the victim in Neil v. Biggers. In fact, the facts in that case are nearly on all fours with the present case as to this issue.

2. See also United States v. Counts, 471 F.2d 422 (2d Cir. 1973), where the same issue was presented, albeit on direct appeal from a federal court conviction.

all judicial responsibilities. In our opinion, however, this petitioner has simply failed in his burden of showing a deprivation of a constitutionally guaranteed right.

Finally, we do not feel that the present case requires an evidentiary hearing as commanded by Townsend v. Sain, 372 U.S. 293, 312–313, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1963). There is no dispute as to the facts surrounding the identification; the record supports the findings; there are no allegations of new evidence; the material facts are adequately developed in the record; and the petitioner had his day in court with respect to the issues herein presented.[3]

For all of the foregoing reasons, it is the opinion of the Court that this petition be, and hereby is, dismissed.

It is so ordered.

---

3. Petitioner's last contention, *viz.*, that the trial court erred in permitting the introduction into evidence of material seized from petitioner incident to an arrest made without probable cause, is raised here for the first time. Since this issue has not been yet presented to a state court, we have not considered it. See Picard v. Connor, 404 U.S. 270, 275–276, 96 S.Ct. 509, 30 L.Ed.2d 438 (1971).