**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph C. VISPI, Defendant-Appellant.**

**No. 156, Docket 76–1250.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1976.

Decided Nov. 15, 1976.

Richard E. Moot, Buffalo, N. Y. (Terrence M. Connors, Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y., of counsel), for defendant-appellant.

Eugene Welch, Asst. U. S. Atty., Rochester, N. Y. (Richard J. Arcara, U. S. Atty., W. D. N. Y., Buffalo, N. Y., of counsel), for plaintiff-appellee.

Before ANDERSON, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal presents one more example of the type of excessive and inexcusable delay in bringing a defendant to trial that led Congress to adopt the Speedy Trial Act, 18 U.S.C. §§ 3161–64. On February 1, 1974, the United States Attorney for the Western District of New York filed an information against appellant, Joseph C. Vispi, charging him in two counts with willful failure to file his personal federal income tax returns for the years 1967 and 1968 in violation of 26 U.S.C. § 7203. Beginning in August, 1974, appellant pressed for a trial. Finally, on October 23, 1975, approximately six and one-half years after the first alleged violation occurred and more than 20 months after the charges were filed against him, Vispi waived a jury and was brought to a trial lasting one and one-half days before Judge Harold P. Burke who, after an additional six-month delay, adjudged him guilty, sentencing him to pay a fine of $500 on each count. We reverse on the ground that the district court's long delay in bringing the case to trial violated Vispi's Sixth Amendment rights and we remand with directions to dismiss the information.

The government's interest in Vispi's tax delinquency arose in April, 1969, when the Internal Revenue Service ("IRS") commenced an audit of his 1965 and 1966 tax returns. During the audit the revenue agent discovered that Vispi had not filed his income tax returns for the years 1967 and 1968. In the fall of 1969 this matter was turned over to the IRS Intelligence Division for criminal investigation, which was terminated in November 1970. On February 1, 1974, Vispi was named in a two-count information. On August 14, 1974, the Government filed its notice of readiness for trial and, finally, after extended pretrial delays, a trial was held on October 23–24, 1975, before Judge Burke, who did not file his one-page decision finding the defendant guilty until April 21, 1976, almost six months later.

Vispi contends that the pre-information delay violated his Sixth Amendment right to a speedy trial and his Fifth Amendment right to due process and a fair trial, that the government's delay in filing its statement of readiness violated Rule 4 of the Western District's Plan for the Prompt Disposition of Criminal Cases,[1] and that the

---

1. Rule 4 of the Plan provides in pertinent part: "In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried . .

post-information delay also violated the Sixth Amendment.

## DISCUSSION

### Pre-Information Delay

■ In determining whether pre-indictment delay is so excessive as to violate a defendant's rights, we are governed by a few well-settled principles. The primary guardian of the individual's rights is the statute of limitations, *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), which was enacted to protect against a person's having to defend against stale criminal charges after the evidence may have been lost and to encourage law enforcement officials promptly to investigate and prosecute suspected offenders. *Toussie v. United States*, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). Where charges are filed within the statutory period, a defendant may still invoke his Sixth Amendment right to a speedy trial against undue delay on the part of the government or of the court. However, the period of relevant delay does not start at the time of the alleged offense but when the defendant assumes the status of an "accused," *United*

*States v. Marion*, 404 U.S. at 313, 92 S.Ct. 455, which usually occurs upon arrest or indictment, whichever event first occurs.[2] See *United States v. Joyce*, 499 F.2d 9, 19 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974). "Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation; his situation does not compare with that of a defendant who has been arrested and held to answer." *United States v. Marion, supra*, 404 U.S. at 321, 92 S.Ct. at 464.

■ Appellant argues that for Sixth Amendment purposes the period of pre-information delay should be deemed to have commenced with the investigative interrogation of him by IRS agents, including *Miranda* warnings,[3] and the requests for production of business records. We disagree. Mere investigation, unaccompanied by arrest or public charges, does not pose a sufficient interference with a person's liberty, resources, employment or relations with others to warrant constitutional protection. See *United States v. Marion, supra*, 404 U.S. at 309–13, 92 S.Ct. 455; *United States v. Joyce, supra*.

■ Appellant was not arrested prior to the filing of the information on February 1,

---

whichever is earliest. If the government is not ready for trial within such time, and if the defendant is charged only with non-capital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment. Any motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-month period under one or more of the exceptions in Rule 5, the motion shall be denied. . . . Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days."

2. In his concurring opinion in *Marion*, Justice Douglas suggested that the rights of an accused be broadened to protect against non-formal, but nonetheless "public accusation," reasoning that the public opinion process, "may weigh more heavily upon an individual who has

not yet been formally indicted or arrested" and "exoneration by a jury of his peers may be only a vague possibility lurking in the distant future." In the present case, there is no evidence that Vispi received a trial or accusation in the press or other media. His pre-information rights must therefore focus on the formal proceedings in this case.

3. We reject the government's contention that *United States v. Beckwith*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1975), which held that *Miranda* warnings were not required in a non-coercive, non-custodial criminal tax investigation, is relevant to the issue of defendant's status as an "accused." The right to a speedy trial broadly protects the accused from adverse societal effects of delay in determining guilt or innocence and is triggered by public accusation, while *Miranda* protects an individual from government coercion and is generated by an inherently coercive situation. *Beckwith* is therefore uninstructive on Sixth Amendment issues.

1974. There is no evidence that anyone besides the government and the appellant and his family were aware of the investigation. Moreover, this is significant indication that his own activities in attempting to dissuade the authorities from prosecuting him was a major factor in the delay between the end of the IRS investigation and the filing of the information. Accordingly, we hold that appellant assumed the status of an accused only upon the filing of the information. No support exists, therefore, for his claim of Sixth Amendment protection based on the government's delay prior to that date.

■ Nor does the record offer any support for the claim that the government's long pre-information delay denied Vispi due process in violation of his Fifth Amendment rights. There is no evidence that the government utilized the delay as an intentional device to gain a tactical advantage over Vispi or that it resulted in some specific prejudice to him.[4] See *United States v. Marion, supra; United States v. Foddrell*, 523 F.2d 86, 88 (2d Cir.), *cert. denied*, 423 U.S. 950, 96 S.Ct. 370, 46 L.Ed.2d 286 (1975); *United States v. Eucker*, 532 F.2d 249 (2d Cir. 1976); *United States v. Iannelli*, 461 F.2d 483, 485 (2d Cir.), *cert. denied*, 409 U.S. 980, 93 S.Ct. 310, 34 L.Ed.2d 243 (1972); *United States v. Capaldo*, 402 F.2d 821, 823 (2d Cir. 1968), *cert. denied*, 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969). To constitute a denial of due process more by way of prejudice must be shown than the dimming of the defendant's memory, see *United States v. Finkelstein*, 526 F.2d 517, 526 (2d Cir. 1975), especially when a portion of the delay is attributable to the defendant's attempts to dissuade the government from bringing a criminal, rather than a civil, action. See *United States v. Singleton*, 460 F.2d 1148 (2d Cir. 1972), *cert.*

---

4. This Circuit has not yet been presented squarely with the issue of whether both elements articulated in *United States v. Marion, supra*, need to be shown in order to prove a violation of the Due Process Clause as a result of pre-information or pre-indictment delay. In the present case, as in its predecessors, we need not reach the issue since appellant has not

*denied*, 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973).

### The Government's Notice of Readiness

■ Appellant next argues that since the government filed its notice of readiness 14 days more than six months after the filing of the information, the six-month limitation fixed by Rule 4 of the Western District's Plan for the Prompt Disposition of Criminal Cases, *supra* note 1, mandates dismissal. Here again we must disagree.

Although not even minimal unexcused delays beyond the six-month period are tolerated under the Western District Plan, see *United States v. McDonough*, 504 F.2d 67 (2d Cir. 1974); *United States v. Flores*, 501 F.2d 1356 (2d Cir. 1974), here the record reveals that, in computing the six months, various periods must be excluded pursuant to Rule 5 of the Western District's Plan with the result that the permissible period extends beyond the additional 14 days taken by the government. For instance, an 11-day delay caused by the recusal of both district court judges in Buffalo on the grounds that they were personal friends of the defendant, which necessitated the subsequent transfer of the case to Rochester, was clearly excludable as occasioned by an "exceptional circumstance" within the meaning of Rule 5(h). The six-month period was further tolled pursuant to Rule 5(2) for the additional period of at least the 13 days required by the government to respond to appellant's pretrial motions. As a result of these exclusions the filing of the notice of readiness on August 14, 1974, was timely. Since there is no evidence that the government was not ready to proceed to trial on that date, the indictment was not dismissible under Rule 4 of the Western District's Plan.

---

shown actual prejudice. See, e. g., *United States v. Payden*, 536 F.2d 541 (2d Cir. 1976); *United States v. Brasco*, 516 F.2d 816 (2d Cir. 1974), *cert. denied*, 423 U.S. 860, 96 S.Ct. 116, 46 L.Ed.2d 88 (1976); *United States v. Mallah*, 503 F.2d 971 (2d Cir.), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), and the cases cited in the text.

### The Post-Information Delay

Appellant's contention that the 20-month delay between the filing of the information and commencement of trial violated his Sixth Amendment right to a speedy trial presents a much more serious question. Under the test established by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),[5] we must, in resolving this issue, consider four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right and the prejudice to the defendant. See *United States v. Roberts,* 515 F.2d 642, 645 (2d Cir. 1975). However, the Supreme Court added in *Barker, supra,* 407 U.S. at 533, 92 S.Ct. at 2193:

> "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather they are related factors and must be considered together with such other circumstances as may be relevant."

Standing alone, the 20-month period, though far more than that permitted under the since-enacted Speedy Trial Act (even after allowing for periods normally excluded that might extend the permissible time), could not by itself be classified as *per se* excessive.[6] But as we pointed out in *United States v. Roberts, supra,* 515 F.2d at 646, "a delay not patently unreasonable in length may nonetheless be intolerably long in light of 'the peculiar circumstances of the case'," quoting *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

Here the circumstances demonstrate beyond doubt that the delay was unduly long. It is relevant that the 20-month period was immediately preceded by a period of approximately 4 to 5 years between the government's discovery of the alleged offense and its filing of the information. Although for reasons we have noted this long stretch of time may not have triggered appellant's Sixth Amendment rights, see *United States v. Marion, supra,* it did give the government ample time in which to investigate and marshal its evidence for an immediate trial following its filing of the information. The charges and evidence were simple and uncomplicated. Proof of the defendant's non-filing of his federal tax returns was the prime element of the government's case. There were no co-defendants, few witnesses, and the trial itself, when it was eventually held, lasted only 7½ hours. After the lapse of the 4 to 5-year investigatory period, further delay in the trial could only serve to increase Vispi's burden of obtaining witnesses and evidence to show that his conduct had not been willful.

The reason for the inexcusable delay in bringing appellant to trial rests squarely at the door of the district court itself, with the government contributing substantially to the blame by its failure, even after an inordinate amount of time had passed following its filing of the information, to press for trial. The court's apparent lack of interest in getting the case to trial is evidenced by the fact that after defendant's simple pretrial discovery motions were filed on April 24, 1974 (less than three months after the indictment was filed) and were taken under

5. Appellant's claim under Rule 48(b) of the Federal Rules of Criminal Procedure is coterminous with his Sixth Amendment claim. See *United States v. Singleton, supra*; *United States v. Infanti,* 474 F.2d 522, 527 (2d Cir. 1973).

6. Beginning on July 1, 1979, the court will be required to bring a defendant to trial within 70 days after the filing of an information, as extended by excluded periods. Periods longer than 20 months have been held, under the circumstances of a particular case, not to violate the Sixth Amendment. See, e. g., *United States v. Saglimbene,* 471 F.2d 16 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973) (six years from trial to indictment); *United States v. Infanti, supra* (28 months); *United States v. Fasanaro,* 471 F.2d 717 (2d Cir. 1973) (four years); but see *United States v. Roberts, supra* (16 months held unreasonable); *United States v. Calloway,* 164 U.S. App.D.C. 204, 505 F.2d 311 (1974) (15 months unreasonable).

advisement by the court on May 28, 1974, the trial judge held this routine discovery motion *sub judice* for 17 months, until October 20, 1975. After the government, only in response to prodding by the defendant, filed its August 14, 1974, notice of readiness to try this simple misdemeanor case, the trial judge did not bring it to trial until October 23, 1975, more than 14 months later.

Even after allowing for institutional problems, including the court's backlog and the unfortunate loss of the late Chief Judge Henderson, no valid reason is offered for the long delay in trying this case. The defendant's simple discovery motion, which had been consented to except for one or two minor items still in dispute, should have been disposed of promptly by the trial judge. Regardless of the judge's inaction or the fact that the delay may have been in part attributable to institutional factors, the government was not entitled to sit back and rely on its pro forma notice of readiness; it owed the additional duty of monitoring the case and pressing the court for a reasonably prompt trial. We have repeatedly emphasized that affirmative action by the government in bringing cases to trial is mandated and that it cannot escape this duty on the ground that the delay is for institutional reasons. See *United States v. Bowman*, 493 F.2d 594 (2d Cir. 1974); *United States v. Favolaro*, 493 F.2d 623, 625 (2d Cir. 1974); *United States v. Roberts, supra.* Both the court and the government had a responsibility not only to the defendant but to the public to see that this simple little case was tried promptly rather than delayed for more than a year. They failed in that responsibility.

The district court's lethargy in the handling of this case becomes all the more astonishing when one turns to the next factor to be considered under *Barker v. Wingo*, i. e., whether the defendant made a timely assertion of his Sixth Amendment right to a speedy trial. Here the record, unlike that in most cases where denial of a speedy trial right is claimed, reveals that appellant repeatedly and energetically asserted his rights, beginning in August 1974, but was ignored. By letter dated August 6, 1974, defense counsel protested the government's delay in filing any supplemental response to the defendant's April 1974 discovery motion, advising that he would ask that the delay be charged against the government. When the government in reply relied on its earlier May response, defense counsel wrote Judge Burke on August 22, 1974, asking that the dispute over the two minor discovery items be resolved and advising that "the defendant wishes to have this case set for trial." On May 15, 1975, after the court had failed for nine months to grant his request, the defendant moved to dismiss the information for failure to afford him a speedy trial. Even after this motion was filed the case was not brought to trial by Judge Burke for still another five months.

Turning finally to the fourth *Barker* element—prejudice—it is obvious that although specific handicaps attributable to the post-information delay in the present case are difficult to pinpoint, Vispi did suffer substantial harm of the type which the Sixth Amendment was intended to remedy.[7] The long pendency of the criminal charges against him, in addition to their effect upon his morale, had a more serious adverse effect on his income than might otherwise have been the case, since his retention as an attorney by others and as a confidential clerk to a New York Supreme Court justice

---

7. The fact that the information was filed within the period fixed by the statute of limitations is not determinative of the prejudice to defendant's case thereafter. Congressional enactments limiting time periods for the filing of an indictment or information assume that the defendant will be brought to trial within a reasonable time. "These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion, supra*, 404 U.S. 322, 92 S.Ct. 464. However, where trial has not commenced within a reasonable time after the expiration of the limitations period, the probability of serious general prejudice to a defendant's case is strong.

turned greatly on confidence in his integrity, which was now being questioned.

■ Appellant was further prejudiced for the reason that his defense, unlike the government's case (which rested principally on contemporaneous records as explained by government agents), was that his failure to file his returns had been due to negligence and oversight caused by the severe pressure of overwork and loss of records during the 1967–69 period. To sustain this defense Vispi faced a formidable task of attempting to locate old records and to dredge up dimmed recollections—a task that was made more difficult by the 20-month delay on top of the four to five-year presentence lapse.

We find the prejudice in this case, when considered with the other factors and circumstances, to be sufficient to satisfy the requirements of *Barker v. Wingo, supra.* That a defendant should be accorded a fair and prompt chance to exculpate himself, as well as to be relieved of the anxiety and societal pressures of a public accusation of criminal conduct, lies at the root of the Sixth Amendment's guarantee of a speedy trial. Vispi was not accorded that right. In addition to suffering all of the expected personal consequences that flow from the pendency of criminal charges for a period that was both unreasonably long and unexplained, he could hardly have been expected to cope successfully with his own fleeting memory and that of his associates and potential witnesses, long since dulled and hence subject to impeachment, much less to recover files that had been mislaid or inadvertently destroyed.

■ For these reasons we conclude that the appellant has made a satisfactory showing in accordance with the principles laid down by the Supreme Court in *Barker v. Wingo* that he was denied his Sixth Amendment right to a speedy trial. Accordingly we reverse the judgment of conviction with directions to dismiss the information. In view of our disposition of the appeal on the above grounds, it becomes unnecessary to resolve the other claims of error.

MULLIGAN, Circuit Judge (dissenting):

I respectfully dissent. I know of no other decision in this circuit which concludes that although there was no violation of the time limitations provided by a district court's Plan for the Prompt Disposition of Criminal Cases, there was nonetheless a delay so egregious that the defendant's Sixth Amendment constitutional right to a speedy trial was violated. The majority opinion holds that while the mere length of time between the filing of the information and the trial, which was here 20 months, cannot in itself be classified as *per se* excessive, it may nonetheless be intolerably long in light of the peculiar circumstances of the case. *United States v. Roberts,* 515 F.2d 642, 646 (2d Cir. 1975).

While the period of delay here triggers the inquiry under *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), I find no peculiar circumstances in this case which create constitutional infirmity. I believe the majority overstates the factor of prejudice to Vispi resulting from the delay. Although the majority properly concludes that the alleged pre-information delay here did not warrant constitutional protection, *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), it nonetheless argues that this very delay did give the government ample time to marshal its evidence for a "simple and uncomplicated" trial. On the other hand, it finds that this period of delay plus the 20-month post-information delay which is all that is before us, damaged Vispi's "formidable task of attempting to locate old records and to dredge up dimmed recollections." I see no support in the record for this alleged prejudice. Vispi knew from his audit in 1969 that the IRS was aware that he had not filed his 1967 and 1968 income tax returns. He was an attorney and late in 1970 was concerned enough to have retained counsel in view of the IRS investigation. The record indicates, and the majority comments, that part of the pre-information delay is attributable to defendant's attempts to dissuade the government from bringing a criminal, rather than a civil ac-

tion. Vispi also retained a sophisticated New York City law firm which specialized in criminal tax matters. It is unrealistic in my opinion not to assume that his counsel had not only anticipated the possibility of criminal proceedings but had made efforts to ascertain the facts and to identify the records and the witnesses which would provide Vispi's defense. The issue of his willfulness in failing to file had to be reviewed by Vispi and his counsel much earlier than any period of delay.

The majority also contends that the long pendency of the criminal charges had an adverse effect on his income since, as an attorney, others would hesitate to retain him because of the attack on his integrity. There is nothing in the record to support this hypothesis. While Vispi's brief on appeal states that his income in 1970 and 1971 was less than his income in 1967 and 1968, no information was filed until 1974. Hence the delay could hardly have caused a diminution of income in prior years. The delay here permitted Vispi to continue whatever law practice he had. An earlier conviction would have had a much more serious impact than the filing of the information. I do not minimize the psychological trauma which every defendant faces once he is charged with a crime. But Vispi was never incarcerated, and he was charged with a crime which can hardly compare with the seriousness of the murder count faced by the defendant in the seminal case of *Barker v. Wingo, supra,* where the defendant waited for five years for a trial, spent ten months in jail, and the Court still found no constitutional violation of speedy trial rights.

The reason for the delay is clearly a factor to be considered under *Barker's* balancing test. There is nothing at all to indicate that the government was delaying the trial of this case for some strategic advantage as in *United States v. Roberts, supra,* where the government's studied inactivity prevented the defendant from obtaining a youthful offender probationary sentence since the criminal proceeding was delayed beyond his 26th birthday. The government, as found by the majority, had

filed its notice of readiness within the time provided by the Prompt Disposition Rules then in effect in the Western District of New York. It is now urged that the district court was lethargic and lacked interest in the case, a judgment which is readily made in hindsight. It is true that institutional delays are chargeable to the government but "they are not appropriately treated with the same severity as delays procured by the prosecution." *United States v. Roberts, supra,* 515 F.2d at 646. In its discussion of this factor, the Supreme Court in *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted) noted:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

Since two of the three active judges in this overburdened district were precluded from trying the case because they knew Vispi (a former director of the local Bar Association and president of his class at the University of Buffalo Law School), there was only one judge available for the trial in the district. This did have some advantage for Vispi by removing the trial from Buffalo where he was well known to Rochester. It had the disadvantage of delaying the disposition of the case. Since calendar congestion or even negligence are to be classified as neutral factors in the balancing under *Barker,* I cannot weigh them heavily here.

Finally, it is the fact that the appellant here did request a prompt disposition of his case. Had he not sought a speedy trial under *Barker v. Wingo, supra,* 407 U.S. at 522, 92 S.Ct. at 2188, "the unsatisfactorily severe remedy of dismissal of the indictment" would not be appropriate. However, it does not follow that an unheeded request for prompt disposition necessarily requires that we dismiss the information. In *United States ex rel. Walker v. Henderson,* 492 F.2d 1311 (2d Cir.), *cert. denied,* 417 U.S.

972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974), the appellant, who claimed that his federal constitutional right to a speedy trial in a state court had been violated, had also unsuccessfully sought the prompt disposition of his trial. Even though he had been imprisoned for 15 months, this court found no constitutional violation. See *United States v. Diaz*, 535 F.2d 130, 133 (1st Cir. 1976).

I recognize that each case must rest on its own facts and that *Barker v. Wingo*, while identifying the relevant factors, does not purport to calibrate with precision the weight to be accorded each. See Rudstein, *The Right to a Speedy Trial: Barker v. Wingo In the Lower Courts*, 1975 U.Ill.L.F. 11, 58. However, I do not consider the lapse of time here to be that excessive particularly where no imprisonment was involved. I see no real prejudice to Vispi in the delay, and there is no evidence that it affected his income or damaged his defense. I consider the institutional delay neutral since it was not deliberate. I am not persuaded that his asking for prompt disposition creates any balancing in his favor. One would expect a member of the bar continuously represented here by competent counsel to make appropriate motions, which might not be the case with less sophisticated defendants charged with more serious crimes. While a failure of counsel here to seek a speedy trial would probably be fatal to the constitutional claim, it is clear that the failure of the court to grant the request does not automatically create a constitutional violation. In sum, considering all the circumstances, I do not believe that the delay here was of constitutional magnitude under *Barker v. Wingo*.