UNITED STATES of America,

v.

Victor CUMBERBATCH, Defendant.

No. 76 Cr. 1076.

United States District Court,
S. D. New York.

Dec. 16, 1976.

Robert Bloom, New York City, for defendant.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for plaintiff; Jeremy G. Epstein, Asst. U. S. Atty., New York City, of counsel.

PALMIERI, District Judge.

The defendant moves to dismiss the present indictment (76 Cr. 1076) on six different grounds. For the reasons set forth hereinafter, the motion is denied.

The complex history of this case may be summarized as follows: Cumberbatch was indicted for armed bank robbery under 18 U.S.C. §§ 2113(a), (b) and (d) in 1973 (73 Cr. 319). On October 23, 1973, he was produced from state custody pursuant to a writ of *habeas corpus ad prosequendum* and entered a not guilty plea. The Government filed a notice of readiness for trial on December 18, 1973. Raul Estremera, a co-defendant, was tried and convicted in May 1975. Cumberbatch was unavailable to be tried at that time because he was on trial in state court. The state trial ended in late June of 1975, and in July the Government requested a pre-trial conference to clarify the question of Cumberbatch's representation. That conference was held September 9, 1975, and attended by a Legal Aid Society representative and by Robert Bloom, Esq., Cumberbatch's present attorney. Cumberbatch was produced at that time by

a writ of *habeas corpus ad prosequendum.* No trial date was set at that conference because of Mr. Bloom's extensive trial commitments for the ensuing months.

In April 1976, Judge Duffy set June 7, 1976, as the trial date. Although by letter dated April 26, 1976, Mr. Bloom objected to the June 7 trial date, that date was not changed by the court. Accordingly, in May, Cumberbatch was again produced from state custody on a writ of *habeas corpus ad prosequendum* in anticipation of the June 7 trial. On June 7, Mr. Bloom informed the court that he was engaged in a state trial, and the court thereupon fixed July 13, 1976, for the trial. Although Mr. Bloom requested at that time that Cumberbatch be kept in federal custody so as to enable him to prepare for trial, the writ was satisfied and Cumberbatch returned to state custody because of the overcrowded conditions at the Metropolitan Correctional Center and because of concern that he might attempt to escape. Because Mr. Bloom was still engaged in the state trial on July 13, the trial on the 1973 indictment was adjourned *sine die* at that time.

On August 12, 1976, Cumberbatch moved to have the 1973 indictment dismissed on the ground that the Government had failed to comply with the requirements of the Interstate Agreement on Detainers ("IAD") (18 U.S.C., App.). Judge Duffy denied the motion to dismiss on September 18, 1976. Subsequently, the Court of Appeals decided *United States v. Mauro,* 544 F.2d 588 (2d Cir., 1976) which raised a doubt about the validity of the 1973 indictment.[1] On October 29, 1976, the case was transferred to this court for trial. On November 23, 1976, the Government obtained a "supplementary" indictment charging Cumberbatch with conspiracy (18 U.S.C. § 371) and carrying a firearm during the commission of a felony (18 U.S.C. § 924(c)(2)). The Government acknowledges that both indictments are based on the same underlying incident. Over the Government's opposition, this court dismissed the 1973 indictment on the ground that the Government had failed to comply with the IAD, as construed by the Court of Appeals in *Mauro.*

■ The defendant's first argument in its motion to dismiss the present indictment relies on the IAD and the *Mauro* decision. He argues that the supplementary indictment should be dismissed because it was obtained solely for the purpose of circumventing the *Mauro* holding and avoiding the requirements of the IAD. The Government responds that neither *Mauro* nor the IAD requires dismissal of the present indictment. This court's dismissal of the 1973 indictment, the Government argues, only precludes reindicting the defendant on the same charges alleged therein, not all possible charges arising out of the incident underlying the 1973 indictment.

The Second Circuit in *Mauro* did not consider the possible alternatives available to the Government after the dismissal of an indictment under Article IV(e) of the IAD, and the parties have not cited to this court any controlling authority on this issue.

While it appears that the defendant is correct in asserting that the Government's purpose in reindicting Cumberbatch was to salvage its prosecution in the face of the *Mauro* holding, the facts of this case suggest that this defendant should not be permitted to avail himself of the benefits of the IAD. The purpose of the IAD, as stated in Article I, is "to encourage the expeditious and orderly disposition of [untried indictments, informations or complaints]" in order to remove "uncertainties [in a defendant's future] which obstruct programs of

1. In *Mauro,* the Court of Appeals held that the Interstate Agreement on Detainers committed the United States to all of its terms in the capacity of both a sending and a receiving state. It further held that a writ of *habeas corpus ad prosequendum* is a detainer under the Agreement entitling a state inmate to the protections provided in Article IV. Specifically, Article IV(c) requires that when a prosecutor initiates the statutory mechanism to produce a defendant imprisoned in another jurisdiction, the defendant is entitled to a trial within 120 days. Article IV(e) provides that if such trial is not had prior to the defendant's being returned to the original place of imprisonment, the indictment, information or complaint that was the basis for the detainer must be dismissed with prejudice.

prisoner treatment and rehabilitation." Although the defendant has been afforded several opportunities for a speedy trial, he has, through his counsel, repeatedly sought lengthy adjournments. In fact, the Government's failure to comply with the IAD in June of 1976 was in part caused by Cumberbatch's attorney's failure to make himself available for the June 7 trial which Judge Duffy had set. These delays have directly served the defendant's trial tactics which have thoroughly exploited the passage of time, the alleged inconsistencies among government witnesses, and the Government's alleged failure to sustain its burden of identifying the defendant at the scene of the bank robbery. Since Cumberbatch has repeatedly obstructed the "expeditious and orderly disposition" of this case, it is highly inappropriate to permit him to take advantage of a statute whose purpose is to encourage such a disposition. Moreover, Cumberbatch has not contended at any time that his program of rehabilitation was adversely affected by his being returned to state custody. The only prejudice he has alleged is that his return made it difficult for him to communicate with his attorney, a problem which the IAD was not intended to address. In view of this factual background, it would be improper for this court to extend the *Mauro* holding to include the supplementary indictment in this case.

The defendant's second argument is premised on the "same transaction" test in the double jeopardy area which was enunciated by Justice Brennan in his concurring opinion in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe*, the Supreme Court held that the doctrine of collateral estoppel was included in the fifth amendment's guarantee against double jeopardy. Justice Stewart, writing for the Court, did not adopt the "same transaction" test, and, thus, it has not been held to be part of the collateral estoppel element of the Double Jeopardy Clause. Moreover, the collateral estoppel argument is wholly inapplicable to this case. As the Court in *Ashe* stated, collateral estoppel bars the relitigation by the same

parties of an issue of ultimate fact which has been determined by a valid and final judgment. 397 U.S. at 443, 90 S.Ct. 1189. No such fact has been litigated in the present case, and, thus, the collateral estoppel rule does not apply.

Cumberbatch's third ground for dismissal is based on "general speedy trial principles." His attorney indicated in court that this argument is addressed to the court's discretion to dismiss the indictment because of undue delay under F.R.Crim.P. 48(b) and under the Speedy Trial Act, 18 U.S.C. §§ 3161, 3162, 3163.

The defendant has not demonstrated any basis for dismissing the present indictment because of delay by the Government either prior to the indictment or after it. With respect to the pre-indictment period, he has not shown that any delay in indicting him has caused substantial actual prejudice to his right to a fair trial or that the Government used the delay as an intentional device to gain a tactical advantage over him. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Vispi*, 545 F.2d 328 (2d Cir., 1976). Moreover, the approximately three and one-half year delay between the crime charged here and the filing of the supplementary indictment does not violate any standard established in this circuit. As the Second Circuit has reaffirmed recently in the context of pre-indictment delay, the "primary guardian of the individual's rights is the stature of limitations," *United States v. Vispi, supra*, at 331. *See also United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). The Court of Appeals has countenanced delays which were comparable to, and in excess of, the period involved here. *See e. g., United States v. Finkelstein*, 526 F.2d 517 (2d Cir. 1975); *United States v. Ferrara*, 458 F.2d 868 (2d Cir.), *cert. denied*, 408 U.S. 931, 92 S.Ct. 2498, 33 L.Ed.2d 343 (1972).

With respect to any alleged post-indictment delay the Supreme Court has indicated that the courts should employ a balancing test, considering four factors as par-

ticularly relevant: (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his rights; (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In the context of the history of this case, discussed above, an analysis of these factors clearly demonstrates that the defendant has not been denied his right to a speedy trial. The length of the delay, though substantial, is not inordinate, and the reasons for the delay clearly justify its duration. The defendant has not demanded a timely trial and, in fact, has delayed it considerably. Finally, not only has he not shown any prejudice from the delay, he has exploited it to his advantage as already indicated and by being tried alone and separately from his already convicted accomplices. Co-defendants Monges and Washington pleaded guilty on May 4, 1973, before Judge Duffy of this court. Estremera was tried and convicted before Judge Duffy on May 23, 1975.

It is unclear from the defendant's general reference to 18 U.S.C. §§ 3161, 3162, and 3163 what arguments he contends support his motion to dismiss under the statute. Since the possible arguments arising from these provisions are comparable to those the defendant raises with respect to the Southern District Plan for Prompt Disposition of Criminal Cases ("the Plan"), the discussion of defendant's arguments based on the Plan is sufficient to deal with them.

It should be noted that the defendant has asserted, without any supporting evidence, that the supplementary indictment was sought by the Government in order to "get" Cumberbatch who is allegedly a member of the "Black Liberation Army." The Government flatly denies this unsupported allegation and represents that the evidence at trial will sufficiently demonstrate the defendant's participation in a particularly violent crime.

■ Cumberbatch raises three arguments based on the time limits set forth in the Plan. First, he argues he was not arraigned within ten days of the filing of the supplementary indictment, as required by Rule 4(a) of the Plan. A similar requirement appears in 18 U.S.C. § 3161(c). While the defendant was not arraigned within the ten day period, the applicable rules do not require dismissal of the indictment. Under Rule 11(e), the court *may* dismiss for failure to comply with the time limits set forth in the Plan but it is not required to do so. Here, a timely arraignment was impossible due to the severe weather conditions in upstate New York where the defendant was being held in state custody. These weather conditions caused the closing of the Buffalo airport and delayed the transfer of the defendant to the Southern District. Under such circumstances, dismissal of the indictment is not warranted under Rule 11(e). See also 18 U.S.C. § 3163(c) which suspends the effective date of the sanctions provisions of the Speedy Trial Act (18 U.S.C. § 3162) until July 1, 1979.

■ Second, Cumberbatch argues that the present indictment should be dismissed because it was not timely filed under Rule 3(a) and 3(b) of the Plan. Following defendant's argument, the Government should have been required to file the present indictment on or before September 1, 1976. He contends that under Rule 3(a)(1) the indictment had to be filed within 60 days of July 1, 1976, because under Rule 3(b) Cumberbatch must be deemed to have been arrested at some time prior to July 1, 1976. Defendant's argument, however, fails to consider the applicability of Rule 5(d) which governs superseding indictments and indictments charging a defendant with an offense required to be joined with those charged in earlier indictments. Rule 5(d)(5) provides:

> (5) The time within which an indictment or information must be obtained on the subsequent charge, or within which an arraignment must be held on such charge, shall be determined without regard to the existence of the original indictment or information.

It is unclear from the Plan how the courts are to apply the time limits set forth in Rule 3 to subsequent indictments governed by Rule 5(d)(5). It is highly unlikely that

the Plan envisioned a requirement that all subsequent indictments be filed within 60 days of a defendant's arraignment on the original indictment, as Cumberbatch argues. In the present case, it is more reasonable to deem Cumberbatch's arrest with respect to the supplementary indictment to have occurred at the time at which he was held in custody "solely for the purpose of responding to a Federal charge." Rule 3(b)(i). In any event, the court is not required to dismiss this indictment because of untimely filing, Rule 11(e), and under the facts of this case it would be inappropriate to dismiss it.

[redacted] Finally, Cumberbatch argues that the indictment must be dismissed because the Government was not ready for trial as required by Rule 7 of the Plan. Rule 7 requires that the Government be ready for trial within six months of the earliest of three dates: (1) the date of arrest; (2) the date on which the defendant is served with a summons; (3) the date on which a complaint, indictment, or information is filed. The Government's notice of readiness on the 1973 indictment was filed December 18, 1973, and was unquestionably timely. Its notice of readiness on the subsequent indictment was filed on November 23, 1976, the day the indictment was filed. Although the defendant argues that the November 23 notice was untimely, his argument overlooks the fact that Rule 5 alters the time limits with respect to subsequent indictments. Under Rule 5(d)(2), if the original indictment is pending at the time the subsequent charge is filed (as was the case here), the trial must commence within the time limit applicable to the commencement of trial on the original indictment. Accordingly, in this case under Rule 5(a)(1), the trial must commence on this indictment within 180 days of July 1, 1976. Since trial was actually commenced on December 13, 1976, the Government has complied with its readiness requirement. Moreover, in light of the history of the defendant's efforts to delay this trial, it would be wholly inappropriate for this court to dismiss the present indictment for the Government's failure to file a timely notice of readiness, and this court would refuse to do so under Rule 11(e) even if the defendant had established that the Government's notice was not timely.

Accordingly, defendant's motion to dismiss is denied.