**UNITED STATES of America**

v.

**Irving GOLDMAN, Defendant.**

**No. 75 Cr. 337 (KTD).**

United States District Court,
S. D. New York.

Aug. 16, 1977.

See also, D.C., 439 F.Supp. 337.

**354**

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for Government by Audrey Strauss, Asst. U. S. Atty., New York City, of counsel.

Friedman & Gass, P. C., New York City by Arthur S. Friedman, Peter N. Wang, New York City, of counsel; Millard, Greene & Udell, New York City, for defendant.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

By notice of motion filed July 21, 1977, defendant has moved to dismiss the indictment for denial of his speedy trial rights under the Sixth Amendment to the Constitution, the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.,* the Southern District Plan for Achieving Prompt Disposition of Criminal Cases, and the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases.

Irving Goldman was indicted on April 1, 1975 for conspiracy and mail fraud. At a pre-trial conference before me on May 29, 1975 I granted his request, over the government's objection, to defer his time to file motions challenging the indictment until a date ten days after determination by the New York State Supreme Court of motions addressed to prior state indictments covering supposedly the same subject matter as the federal one. Defendant represented at that time that this extension would not be invoked by him with regard to the mandate of Rule 4 of the Plan for Achieving Prompt Disposition of Criminal Cases, the then-governing speedy trial plan for the Southern District of New York. Notwithstanding this representation, the government repeatedly urged the setting of a fixed schedule for filing motions, and announced its readiness for trial by letter dated June 16, 1975.

At a pre-trial conference on September 23, 1975, four months after the granting of defendant's request for the extension, I allowed him one month within which to file his motions, over defendant's protestations that I continue to await rendition of a decision on the state court motions. After obtaining yet another extension, defendant submitted motion papers on November 3, 1975 in support of a motion to dismiss the federal indictment. Also contained in these papers were various discovery requests and a request to stay prosecution of this action pending the outcome of the state proceedings. Because of the voluminous nature of this motion, the government was granted an extension of time to respond, and it did so on December 5, 1975.

On December 29, 1975 the parties appeared for another pre-trial conference at which defendant requested, and was granted, a three-week period within which to inspect certain documents and submit reply papers. The following day, December 30, 1975, the government filed a second notice of readiness for trial. Defendant's reply brief was submitted on January 21, 1976; the government responded on January 28, 1976. According to defendant, the motion was not fully submitted until February 9, 1977.

In March or April 1976 Goldman underwent surgery for a triple coronary bypass. At a conference on September 16, 1976, when I learned that no medical examination had yet been conducted to determine Goldman's medical condition and fitness to stand trial, I directed the parties to have defendant examined, adding that if the parties

could not agree on a doctor, I would appoint one. By January 1977 the parties could not so agree; consequently, by order dated January 13, 1977 I appointed two doctors to examine Goldman and report to the court. A medical hearing with respect to Goldman's condition was then held, which concluded on April 29, 1977. This hearing resulted in a determination that day that Goldman was fit to stand trial and the trial was set down for May 9, 1977. Defendant strenuously objected to this trial date. A further conference was then held on May 3, 1977 and the trial date was deferred.

On June 23, 1977 I held another conference to ascertain defendant's readiness to proceed to trial and was informed of defendant's intention to move to dismiss the indictment on speedy trial grounds should an unfavorable ruling on the motion to dismiss be obtained. Despite defendant's assertions to the contrary, the motion to dismiss, it is emphasized, contained a request to stay this prosecution pending final determination of the two state prosecutions; and, I note, it was not until May 12, 1977 that defense counsel informed my chambers that the second state indictment had just been dismissed.

On June 27, 1977 I issued a 34-page opinion and order denying the motion to dismiss and ruling on the various additional requests. A trial date of August 23, 1977 was set.

On July 21, 1977 defendant filed the instant motion to dismiss the indictment on speedy trial grounds, notwithstanding his history of requests for a stay of the prosecution, the conducting of a medical examination and hearing, and his persistent opposition to the setting of a trial date while his various motions were *sub judice.* For the reasons enumerated hereinafter, the instant motion is denied.

 The challenge to the indictment based on the applicable local rules is palpably insubstantial. From April 1, 1973 until September 29, 1975 this district was governed by the Plan for Achieving Prompt Disposition of Criminal Cases; thereafter until July 1, 1976 when procedures pursuant to the Speedy Trial Act of 1974 went into effect, this district was governed by the Interim Plan pursuant to that Act. Under Rules 4 and 5, respectively, of the pre-July 1976 plans, the government was required to be ready for trial within six months of the filing of this indictment.

That requirement was clearly satisfied in this case. The government's first notice of readiness was filed on June 16, 1975, just two and one-half months following the April 1, 1975 return of the instant indictment. The second notice of readiness was filed on December 30, 1975. Disregarding for the moment the first notice of readiness, but bearing in mind that defendant was granted a stay from May 29, 1975 to at least September 23, 1975 (no less November 3, 1975 when the first set of motion papers were filed) during which time the strictures of Rule 4 were concededly suspended, the second notice of readiness was well within the six-month limitation.

Defendant urges that the government's notices of readiness must be disregarded because of the open discovery items. *See United States v. Pollak,* 474 F.2d 828 (2d Cir. 1973) (remanded for findings on whether failure to comply with an outstanding discovery order rendered the notice of readiness meaningless). However, there is no reason to doubt the sincerity of the government's December 30, 1975 notice of readiness despite the fact that it was aware of open discovery issues when the notice was filed, for substantially all the material subsequently ordered produced had already been made available to defendant. The material subsequently ordered produced under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), consisted of an arrest record of one Harold Rosedale, which defendant claims is not even *Brady* material. The fact that defendant asserts that the government is withholding *Brady* material does not make it so. If defendant's claim be true, appropriate action will be taken at the time of trial when such a showing is made.

Moreover, the government was not the party dragging its feet in this case; it was

the defendant who sought stays, deferrals, and extensions. Although Goldman was indicted on April 1, 1975, it was not until some seven months later that defendant filed his discovery requests and sought a bill of particulars; and from that moment through May 1977 defendant opposed all attempts to speed this case to trial. *Cf. United States v. Armedo-Sarmiento,* 545 F.2d 785, 791 (2d Cir. 1976). It was clearly the defendant who was the instigator of a shoddy attempt to delay whatever justice might be found at trial. Under these circumstances it cannot be said that when the government indicated its notice of readiness for trial, it did not intend to immediately proceed.

██ Any objection based on the Speedy Trial Act of 1974 (the Act), 18 U.S.C. § 3161, *et seq.,* and implementing post July 1, 1966 Southern District Plan for Prompt Disposition of Criminal Cases must also fail for much the same reasons. Pursuant to the provisions of the Act and the Plan a defendant such as Goldman is required to be tried within 180 days of the indictment, 18 U.S.C. § 3161(g); however, cases pending on July 1, 1976, the effective date of the Act, are to be tried within 180 days of July 1, 1976. 18 U.S.C. § 3163(b)(2); Rule 5(a)(1) of the Statement of Time Limits and Procedures for Achieving Prompt Disposition of Criminal Cases (the local rules).

Notwithstanding this requirement, certain periods are expressly excluded from the 180-day calculation. 18 U.S.C. § 3161(h); Rule 10(a) of the local rules. Exclusion is mandated for "delay resulting from an examination of the defendant, and hearing on . . . his physical incapacity," 18 U.S.C. § 3161(h)(1)(A), and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement." 18 U.S.C. § 3161(h)(1)(G). Thus, the 227-day period from September 16, 1976, when a physical examination of Goldman was directed until the conclusion of the medical hearing on April 29, 1977 is excluded, (the extensive delay being caused mostly by the defendant) as is a thirty-day period during the pendency of defendant's complex and voluminous motions which resulted in my lengthy opinion and order. (Here again we are faced with the inventive barrage of letters shifting the sands upon which the various prongs of the motions were posited.) Of the period of 420 days from July 1, 1976 through August 23, 1977, the date on which trial is to proceed, 257 days are thus excluded, leaving a balance of but 163 days which would have elapsed for the purposes of the Act and the local rules. This calculation does not even take into account the mandated excludable time for the pendency of the instant motion, filed on July 21, 1977.

Defendant's attack on this calculation is essentially three-fold. He initially points to a letter written on August 24, 1976 by the Assistant United States Attorney formerly in charge of this case indicating that the case would have to be tried by the end of January 1977 in order to comport with the Act and local rules. However, that letter by its terms recognized that if a medical examination of Goldman were to be conducted, the applicable speedy trial provisions would be tolled; and indeed such an examination was directed shortly thereafter. This letter clearly does not help the defendant's position.

Defendant's second contention is directed at the excludable periods themselves. He argues that the speedy trial clock should not have been stopped for medical proceedings until January 13, 1977 when the doctors were appointed and examination by them ordered, and that, in any event, defendant at no time requested such an examination. However, the record is clear that the examination was specifically directed on September 16, 1976; and nowhere in the statute is it required that such an examination be at the defendant's request.

Defendant also contends that the periods of excludable time must be considered concurrently and not consecutively, and that, in any event, a thirty-day period of exclusion is not mandated with respect to his prior motions since they were pending as of July

1, 1976, the effective date of the Act and local rules. However, that motion was actually "under advisement" within the meaning of § 1361(G) as of July 1, 1976, mandating a thirty-day period to August 1, 1976—a period during which the medical proceedings were not yet envisioned. To include this period simply because another later period must be excluded is nonsense. To say otherwise would be to grant a premium to those defendants with sufficient resources to delay a prompt and just trial—and by inference to deny that to those who are unfortunately poor.

In any event, even were no exclusion mandated for that prior motion, clearly the speedy trial requirements were tolled on July 21, 1977 when the instant motion was filed, and the twenty-six days during which this motion has been "under advisement" must be excluded; thus, the trial is timely.

Defendant's third and final argument on the applicable time period consists of the contention that since it was not until July 22, 1977—25 days following my June 27, 1977 opinion directing the production of certain materials—that the government complied therewith, the August 23, 1977 trial date, anticipating immediate production, must be extended 25 days, thus propelling the case beyond the 180-day limit. This contention is a tidbit of twaddle and requires no discussion.

■ Turning to the requirements of the Sixth Amendment speedy trial guarantee, it is well established that in order to assess whether Goldman's rights were violated, all the relevant factors must be considered, particularly the length and reason for the delay, prejudice to the defendant, and the defendant's assertion of his rights. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ Although approximately twenty-nine months have elapsed between indictment and trial, such a delay is not, in and of itself, unreasonable. See *United States v. Lane,* 561 F.2d 1075 (2d Cir. 1977) (five-year delay); *United States v. Mejias,* 552 F.2d 435 (2d Cir. 1977) (20-month delay); *United States v. Cyphers,* 556 F.2d 630 (2d Cir. 1977) (33-month delay); *United States v. Fasanaro,* 471 F.2d 717 (2d Cir. 1973) (four-year delay). The reason for the delay was manifold and not attributable to the government or the court. Initially, defendant was granted a stay which lasted some four or five months, at the end of which time, at my direction, defendant submitted his motion to dismiss, discovery and related requests and a further request to stay the action pending the determination of the state indictments. After the motion was submitted, although the defendant continued to besiege this Court with letters containing questionable authorities supposedly decisive of the case, Goldman underwent open heart surgery, and to insure that he would only be tried if physically able to stand trial, a medical examination and related hearing was conducted. At the end of the hearing, defendant's counsel vigorously opposed my setting a trial date while his motions were pending. Disposing of the complex motions and setting the case for trial occupied the remainder of the time, and when a trial date was finally set, defendant submitted the instant motion (something which had apparently been chosen as the ultimate defense tactic). This series of events, during which time matters of vital concern to the defendant were proceeding apace, could hardly be considered the cause of an excessive delay.

■ Defendant is correct in asserting that his first series of motions were pending from February 1976 until resolution in June 1977. However, he ignores the fact that contained in these papers was a request for a stay pending resolution of the state court proceedings, and that it was not until May 12, 1977 that defendant's counsel advised me of the disposition of those cases. Instead, relying on *United States v. Vispi,* 545 F.2d 328 (2d Cir. 1976), defendant claims that all of the delay is attributable to the pendency of these motions and that, therefore, dismissal of the indictment is mandated. I disagree.

*Vispi,* characterized by the Court of Appeals as a "simple misdemeanor case," in

which a "simple discovery motion, which had been consented to except for one or two minor items" had been held *sub judice* for seventeen months, *id.* at 334, resulted in a seven and one-half hour trial some fourteen months after the resolution of that motion. Vispi had vigorously asserted his speedy trial rights and had suffered severe prejudice by the delay. Under those circumstances, a constitutional violation was found. Here, however, aside from the causes of delay already enumerated which were not present in *Vispi,* the instant indictment charges a complex and sophisticated conspiracy and forty-three substantive counts. Goldman's prior motion papers were voluminous; both his and the government's submissions comprised hundreds of pages and presented several difficult issues. That *Vispi* presented an entirely different case is manifest. Its total holding is absolutely inapposite.

Moreover, here it was not until the conclusion of the medical hearing on April 29, 1977 that defendant mentioned speedy trial requirements, and that reference notwithstanding, defendant continually opposed the setting of a trial date (and still does). His speedy trial rights were not formally asserted until June 23, 1977 when, in response to my recognition of the speedy trial strictures, defendant made known his intention to file the instant motion; and indeed mentioned other motions the basis and contents of which were left entirely unclear; yet, it was not until almost one month later that the instant motion was made. (I am not holding that this period was inordinate—but I must note that the period was highly unusual.)

As for the factor of prejudice, Goldman asserts that the delay has subjected him to extended anxiety, both for the months this indictment has been pending and prior to that time, as a result of the coverage in the press, although minimal and easily forgotten, during the period leading to his federal and state indictments. That he has suffered is perhaps a valid claim; however, in passing I note that both state indictments against him were dismissed, and he has not been subject to incarceration. While I rec-ognize his claim, I also must note that he can allege no real prejudice as a result of his operation, which he claims has diminished his ability to vigorously defend himself. This assertion is an interesting one, because it was precisely because of this operation that substantial delay was engendered to allow for a medical examination and hearing—delay which he now claims caused him anxiety. It was precisely out of my concern, as a feeling human being, that he might be unable to properly defend himself that I ordered the examination, and held the hearing; and it was the great reluctance on defendant's part engendered in part by trial tactics that he proceeded to the examination in the first place. Under these circumstances, and balancing all the factors, I must conclude that defendant's Sixth Amendment speedy trial rights have in no way been violated.

Defendant's motion to dismiss the indictment on the grounds that he has been denied a speedy trial is denied.

IT IS SO ORDERED.