Allen LUBLIN, Petitioner,

v.

Sally B. JOHNSON, Superintendent of Queensboro Correctional Facility, and Kenneth Dunham, Superintendent of Queensboro Correctional Facility, Respondents.

No. CV–85–3285.

United States District Court, E.D. New York.

Feb. 25, 1986.

---

5. (Childress Dep. Tr., 12–18–84, p. 36, 1. 24–25, p. 37, 1 1–6).

6. (Childress Dep. Tr., 4–22–85, p. 46, p. 60, 1.19).

Reisch, Clarey, Simoni & Gleason, Mineola, N.Y. by Robert L. Clarey, for petitioner.

Denis Dillon, Dist. Atty., Nassau County, Mineola, N.Y. by Bruce E. Whitney and Gary H. Nurkin, Asst. Dist. Attys., for respondents.

## MEMORANDUM AND ORDER

ALTIMARI, Circuit Judge, Sitting by Designation.

Petitioner Allen Lublin petitions this court for a writ of habeas corpus pursuant to section 2254 of Title 28 of the United States Code. Petitioner alleges that the procedure used in procuring his attendance at proceedings on a felony complaint in the Nassau County District Court violated the

Interstate Agreement on Detainers, 18 U.S.C. Appendix.

## FACTS

During October of 1976, while petitioner was being held at the Metropolitan Correctional Center ("M.C.C.") in New York on federal firearms charges, a felony complaint was filed against him in the Nassau County District Court.

On December 2, 1976, petitioner pled guilty to the federal charges, and was sent to M.C.C. pending sentencing.

On January 20, 1977, a writ of habeas corpus *ad prosequendum* was issued pursuant to N.Y. Crim.Proc.L. § 580.30(2) (McKinney 1984) directing the warden of M.C.C. and the United States Marshal to produce the petitioner in Nassau County District Court. On three occasions in February of 1977, petitioner was brought pursuant to this writ from the M.C.C. to state court to attend proceedings on the state indictment. Each time petitioner was returned to M.C.C.

On February 22, 1977, petitioner was sent to the Lewisburg Federal Penitentiary to begin serving the federal sentence of seventeen months imposed on February 11, 1977.

On March 3, 1977, petitioner requested a disposition of indictments, informations, or complaints (i.e. an "agreement on detainers"). The warden of Lewisburg Federal Penitentiary furnished a "certificate of Inmate Status" which indicated the term of commitment, time already served, time remaining to be served, amount of good time earned, date of parole eligibility, any decisions of the State Board of Parole relating to prisoner, maximum expiration date under the present sentence, and pending detainers. The warden indicated that the following detainers were on file as of March 3, 1977: "Poss. Stolen Property, Theft of Personal Property, Poss. of Forged Instrument, Poss. Stolen Motor Vehicle—Nassau Co., N.Y."

On March 31, 1977, the Nassau County District Attorney's Office accepted the federal authorities' offer of temporary custody pending trial on the state indictment.

On April 16, 1977, petitioner once again was brought to Nassau County District Court. Finally, on May 25, 1977, he moved to dismiss the state charges, alleging a violation of the Interstate Agreement on Detainers. The motion was denied, and on July 11, 1977, petitioner pled guilty to criminal possession of stolen property in the second degree, N.Y.Penal Law § 165.45 (McKinney 1975 & Supp.1986). Petitioner was sentenced on July 21, 1977, to an indeterminate sentence of zero to three years' imprisonment that was to run concurrently with the federal sentence he was then serving.

Petitioner has exhausted all available State remedies in accordance with the procedural requirements set out in 28 U.S.C. § 2254(b) and (c), and thus this petitioner is properly before this court. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

## DISCUSSION

■ Both the United States and the State of New York are signatories to the Interstate Agreement on Detainers ("IAD"). *See* 18 U.S.C. Appendix; N.Y. Crim.Proc.Law § 580.20 (McKinney 1984). The provisions of the IAD are triggered when a detainer is filed with the custodial (sending) state by another (receiving) state having untried charges pending against the prisoner. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

■ The IAD is an interstate compact sanctioned by Congress under Art. 1, Section 10 of the United States Constitution. The construction of such a compact presents a question of federal law that is cognizable on federal habeas corpus. *Carchman v. Nash*, —— U.S. ——, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).

Petitioner relies on "Article IV" of the IAD, 18 U.S.C.App. § 2, which provides:

(a) The appropriate officer of the jurisdiction in which an untried indictment,

information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated.

. . . .

(c) In respect of any proceeding made possible by this article, trial shall be commenced in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The IAD was enacted to secure the "speedy trial of persons already incarcerated in other jurisdictions" so as to avoid the deleterious effect that outstanding charges may have on a "prisoner[s'] treatment and rehabilitation." 18 U.S.C.App. § 2, Article I.

Inquiries have revealed that a detainer, consisting of an arrest warrant and felony complaint, was lodged against petitioner while he was being held at M.C.C. Thus, the provisions of the IAD were triggered, if at all, upon filing of this detainer.

■ Although a detainer was lodged against petitioner, the IAD is inapplicable. Petitioner was never imprisoned by the receiving state. On each occasion in question, petitioner was simply produced before the Nassau County District Court and returned immediately to M.C.C. These brief transfers could not have affected detrimentally petitioner's rehabilitation, and thus they are not violative of the IAD. *See United States v. Chico*, 558 F.2d 1047, 1049 (2d Cir.1977), *cert. denied*, 436 U.S. 947, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1980); *see also United States v. Roy*, 771 F.2d 54, 59–60 (2d Cir.1985). Accordingly, petitioner's application for a writ of habeas corpus is denied.

While not pivotal to this determination, this court feels compelled to address several issues raised during oral argument. Under the wording of Article IV(a), the time restrictions of the IAD do not come into play until a person begins service of a "term of imprisonment." Petitioner was sentenced to seventeen months' imprisonment by the United States District Court, Eastern District of New York on February 11, 1977. He was remanded to M.C.C. to await transfer to the United States Penitentiary at Lewisburg, Pennsylvania where he was to serve his federal sentence. On February 22, 1977, eleven days after sentencing, petitioner was transferred to Lewisburg.

Petitioner argues that he began serving his sentence on February 11th when the court imposed a seventeen month sentence. In making this argument, petitioner relies on Section 3568 of Title 18 of the United States Code which provides that a federal sentence commences to run when the defendant is received at "a place of detention to await transportation to the place at which his sentence is to be served." 18 U.S.C. § 3568.

■ This court has been unable to locate authority addressing the applicability of Section 3568 to the IAD, and thus this court apparently is faced with a question of first impression. The legislative history of Section 3568 reveals that "Congress intended in § 3568 to clarify the method of calculating the commencement of a sentence and the deduction for good conduct." *In re Garmon*, 572 F.2d 1373, 1375–76 (9th Cir. 1978), *see Shelvy v. Whitfield*, 718 F.2d 441, 444 (D.C.Cir.1983); *Siegel v. United States*, 436 F.2d 92, 95 (2d Cir.1970). There is no indication that Congress intended Section 3568 to be applied as a general definitional provision governing the interpretation of such phrases as "serving a term of imprisonment" under the IAD.

■ The IAD was enacted for a specific and limited purpose: the minimization of interference "with a prisoner's treatment and rehabilitation." *United States ex rel. Esola v. Groomes*, 520 F.2d 830, 833 (3d Cir.1975). A detainer lodged against a

prisoner can affect adversely a prisoner's treatment and rehabilitation only upon his entry into the assigned facility. Accordingly, petitioner began serving a term of imprisonment upon formally entering the Lewisburg Federal Facility on February 22, 1977, and not on the effective date of sentencing under Section 3568. *See United States v. Wilson,* 719 F.2d 1491, 1494–95 & n. 1 (10th Cir.1983) ("Even though the district court found that the '180 days commenced running at the earliest on February 11' ..., the date Wilson was sentenced in the last State court proceeding, we find that the 180 day time period began running on February 22, 1982, *when Wilson entered the Missouri State Prison.*" (emphasis added)); *see also, Carchman v. Nash, supra* 105 S.Ct. at 3409 n. 9. ("[T]he probationer cannot invoke Art. III until he 'has entered upon a term of imprisonment in a penal or correctional institution of a party State'—that is, until he has been convicted of the offense in the sending State and commenced to serve his sentence there.").

Petitioner commenced serving his "term of imprisonment" on February 22, 1977. Until that date, the IAD was inapplicable, and thus transportation of petitioner to the receiving State on February 1, 7, and 15 did not violate Article IV of the IAD.

Most importantly, it should be noted that the detainer lodged against petitioner did not obstruct his ability to participate in rehabilitative programs. Petitioner was held at M.C.C. for only eleven days after sentencing. This short delay cannot be attributed to the pending detainers, and certainly was not detrimental to petitioner's treatment and rehabilitation. Moreover, only ten months passed from the issuance of the state felony complaint on October 5, 1976 to petitioner's plea of guilty on July 11, 1977. Such a delay is not per se unreasonable. *See, e.g., U.S. v. Cyphers,* 556 F.2d 630, 636 (2d Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977) (delay of 33 months); *United States v. Mejias,* 552 F.2d 435 (2d Cir.1977) (delay of 20 months); *United States v. Goldman,* 439 F.Supp. 352 (S.D. N.Y.1977) (delay of 29 months.). *See gen-*

*erally Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (enunciating factors involved in considering whether defendant was deprived of speedy trial right).

Accordingly, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is hereby denied. The clerk of the court is directed to enter judgment accordingly.

SO ORDERED.